RICHARDSON v. TAYLOR.

1. TRUSTS: *Resulting*: *Parol evidence to prove.*
   Parol evidence is admissible to prove a resulting trust in a deed absolute on its face, even after the death of the grantee.

2. EVIDENCE: *In disparagement of grantor's title.*
   The declarations of a grantor, or former owner of land, in disparagement of his title, made after he has parted with the title, are not admissible for any purpose.

APPEAL from *Jefferson* Circuit Court, in Chancery.

Hon. F. J. WISE, Special Judge.

*N. T. White* for Appellant.

1. It is admitted that the full amount of the decree in favor of the Scull estate against Richardson and the Ashleys, was due and owing by the Ashleys, and that no part of the same was due or owing by Richardson, he having paid his full half of the purchase money.

2. That the Ashleys were to pay the same before they could get their title to the lands.

3. That the contract between Richardson and the Ashleys, under which the Ashleys were to obtain title to the lands—if any such contract was made—was based upon the payment by the Ashleys of the full amount of the Scull decree.

4. That neither of the Ashleys paid any part of this decree, but that Richardson, through the frauds of the Ashleys, or others, was induced, and did pay three thousand dollars of the

·decree, which it was the duty of the Ashleys to have paid, and has received nothing therefor.

5. That at the commissioner's sale the land was bought in by Richardson, and the deed made to him, and at the time of this purchase, appellant was his wife.

6. That Richardson was dead at the time of the institution of this suit.

7. That appellant has never relinquished her dower inter·est in the lands in controversy.

The policy of the law in excluding all parol testimony that tends to alter, change, or vary the terms of a written contract, is clearly illustrated in this case, for, without the explanations ·of Bell and Grace, there would be no doubt of appellant's right to recover on the writings and deeds of the parties. If there was ever an agreement by which Richardson agreed to pur·chase the lands for any one—which we deny—it was based on the agreement that the Ashleys were to pay the full Scull debt. By his purchase Richardson got the legal title, coupled with a ·charge upon the land for payment of the Scull decree, which would entitle his widow to dower. *Scribner on Dower, Vol. 1, 410, Sec. 23; Kent's Com., 4 Vol., 43–46; 31 Ark., 580.* But Ashley never paid the Scull debt; he only had an equitable interest in the lands that neither he nor his vendees could set up to defeat appellant's right of dower, and as neither of them ever did pay the same, they abandoned their equitable right.

If under the agreement between Ashley, Johnson and Richardson, there was a trust created, and that Richardson held the lands in trust to convey back to Ashley the gin-house property, and to Johnson the balance of the Ashley half of the Scull tract, then by agreement between Richardson and Johnson, that agreement—whether written or oral—was by the deed of Johnson to Richardson canceled and declared void, and by said deed the legal and equitable estate, if any existed, vested

in Richardson. The deed from Johnson to Richardson clearly shows this to be the fact.

When the legal and equitable estate of the husband are co-extensive, the latter merges in the former and confers upon the wife the right of dower. *Scribner on Dower, Vol. 1, 410; Sec. 32; Robinson v. Cadman, 1 Seman, 121; Dean v. Mitchell, 4 J. J. Marsh, 451; Caster v. Clark, 4 Edw., ch. 428; Hill on Trustees, 252 note; First Washb. R. P., 162, Sec. 11; Hopkins v. Dumas, 42 N. H., 296.*

Appellant's right to dower could not be defeated by anything her husband said, or any letter he could have written.

*M. L. Bell* for Appellee.

Appellant is not entitled to dower. The only interest her husband ever had in the land was the naked legal title which he held in trust. The facts in this case are different from *Richardson v. Johnson, 44 Ark., 365,* though they grow out of the same transaction. Richardson never had possession, never claimed any title or interest in it, and had no right of possession, and hence his widow could have no dower. *31 Ark., 380.*

Without other evidence than the written declaration of Richardson, in direct response to the inquiry of Taylor, would be sufficient to establish a trust. *Hill on Tr., 3 Am. ed., Secs. 55–6; 1 P. Wms., 322; 3 Simm., 385.* The transaction out of which the trust may result may be proved by parol. *Perry on Trusts, 137.* Even after the death of the grantee. *Ib., Sec. 138.* See also *Leading Cas. in Eq., 333; 1 John. Chy., 582; 5 Cush., 431; 40 Ark., 62.*

1. RESULTING TRUST.

SMITH, J. This was a petition for dower in eight 72-100th acres of land. The defense was that the petitioner's husband, Benjamin F. Richardson, was never beneficially seized of the

premises, but held the legal title in trust for those under whom the defendant claimed. The cause was transferred to equity, and was there determined adversely to the widow.

The land is parcel of a tract of eight hundred acres, which Richardson and William E. and Henry C. Ashley purchased for their joint account in 1856, making their joint notes for the purchase money, and receiving a bond for title. It was agreed between themselves that Richardson should pay one half the purchase price and the Ashleys the remainder. They divided the land equally, the portion now in controversy falling to the Ashleys, who erected thereon an expensive and commodious gin-house, with the usual appurtenances. Richardson paid his share of the debt; but the Ashleys were largely in arrears. And the vendor recovered judgment against the purchasers, and a decree of foreclosure condemning the whole of the land to sale. The land being advertised, an extension of time was granted upon condition of immediate payment of $3000. For this sum Richardson reluctantly gave his draft, as the debt was properly the Ashleys', although he and his land were legally bound for its payment. He was assured and believed that the Ashleys would provide for the draft; but he was forced by process of law, many years afterwards, to pay the draft.

In the fall of 1869, when the commissioner's sale of the lands under the decree was to come on, William E. Ashley being dead, and Henry C. convinced of his inability to pay the land out, it was agreed between Richardson, Henry C. Ashley and one Johnson, that Johnson should pay off the remainder of the decree, some $8000 after deducting the proceeds of the above mentioned draft, and should have Ashley's half of the land, except the eight and 72-100th acres. This small lot Ashley was to be permitted to keep, because his steam gin, built for the convenience of his adjoining plantation, stood upon it. But, as the original vendor of the land had died, leaving infant heirs, it was con-

sidered the shortest method of extinguishing their title to allow the sale to proceed. The land was to be sold in one body, and Richardson was to bid it in and receive a conveyance. This would secure in him the title to his one-half, and when Johnson should pay the money, he would convey their respective parts to Johnson and to Ashley. The testimony tended strongly to show that the arrangement was carried out; that Johnson furnished the money to pay Richardson's bid at the decretal sale, and that Richardson afterwards quit-claimed the gin-house tract to Ashley's grantees, from whom the defendant derives his title. In this conveyance Mrs. Richardson did not join; nor has she ever renounced dower. Her husband was seized during coverture of the legal estate in the premises; and she is entitled to her thirds, unless he was a mere nominal grantee and in reality a trustee.

*Provable by parol evidence.*    When another branch of this controversy was before us (see *Johnson v. Richardson, 44 Ark., 365*), we expressed our reluctance to permit the effect of solemn deeds and written documents to be controlled by parol evidence of the intentions of the parties to them, adduced some thirteen years after the writings were executed. Nevertheless parol proof is admissible to show a resulting trust in a deed absolute on its face, even after the death of the grantee. *Perry on Trusts, Secs. 137–8; Milner v. Freeman, 40 Ark., 62; Babcock v. Wyman, 19 Howard, 289.*

Here, Mr. Bell, the commissioner charged with the execution of the decree, and Mr. Grace, Richardson's legal adviser, both of whom were familiar with the circumstances of the entire transaction, depose to the payment of the purchase money by Johnson, and the previous verbal agreement, out of which the trust arose. The subsequent conduct of both Richardson and Ashley is consistent with the existence of a trust. Richardson never attempted to take possession of this gin property, although it was valuable, the annual rents

amounting to $960. And there is nothing in the record to rebut the presumption of a trust in favor of Ashley, except the deed to Richardson, the report of sale, which states that he was the purchaser, and the commissioner's receipt, acknowledging the payment of the consideration by him.

True, this same testimony was used in the previous case, wherein we intimated an opinion that, so far as we could see, Richardson was seized of such an estate of inheritance in the lands that he afterwards conveyed to Johnson's children, as to entitle his widow to dower, if she had not relinquished it. But there is one circumstance that distinguishes the two cases. After the creation of the trust—assuming that a trust once existed—Johnson executed a deed of rescission, by which he released Richardson from the obligation of the trust, abandoned to him all his rights in the lands, and attorned to Richardson as his landlord. There is no evidence that the agreement between Richardson and Ashley was ever canceled, or meant to be canceled. On the contrary, Richardson afterwards conveys by quit-claim deed to Ashley, apparently in pursuance of the agreement.

At the hearing, the defendant was allowed to put in evidence a letter addressed to him by Richardson, shortly before his death, and after his property had been sold to satisfy the judgment rendered on the $3000 draft. In the course of this letter the writer said: *Declarations in disparagement of title.*

"In regard to the gin-house and land attached, I never in equity had or pretended to have any claim to it; in order to settle the Scull claim against Ashley and myself the technicalities of the law had to be complied with, and the land was deeded to me *in order that a clear* title could be made to the parties buying the same; I never paid one cent for it; neither did I ever pay any taxes on it; in short, I only held as above stated."

The letter would be conclusive on the point of Richardson's relation to the land, if it were competent evidence. But the declarations of a grantee or former owner in disparagement of his title, made after he had parted with that title, are inadmissible for any purpose.

The payment of the draft for $3000 did not vest in Richardson any estate in the Ashley half of the land. Its utmost possible effect was to create an equitable lien for reimbursement by reason of having advanced more than his due proportion of the original purchase money. But even this potential charge was waived or extinguished by the failure to file a bill to establish it, and by the agreement with Johnson and Ashley, and Richardson's conveyance in pursuance of that agreement.

Decree affirmed.