## PETERS v. PRIEST.

### Opinion delivered May 13, 1918.

1. DEEDS—IMPERFECT DESCRIPTION—NONDELIVERY DURING LIFE OF GRANTOR—REFORMATION.—A deed described lands as "the southwest quarter of the southwest half of section 32, township 12, range 6 west, containing forty acres, more or less." *Held,* the description being defective rendered the deed void. *Held* further that as the deed constituted a voluntary gift, and there having been no delivery of possession of the property during the grantor's lifetime, followed by valuable improvements by or for the grantee, equity will not reform the deed so as to correctly describe the land.

2. EVIDENCE—DECLARATION OF A GRANTOR OR FORMER OWNER OF LAND—DISPARAGEMENT OF TITLE.—Declarations of a grantor or former owner of land in disparagement of his title are admissible, when made before he parted with his title.

3. LOST INSTRUMENT—PRESUMPTION.—A. deeded land to B., handing the same to C. for delivery. C. retained possession of both the deed and the land for many years. Upon his deathbed C. delivered the deed to his son to deliver the same to B., which the son did, the deed being in an old and worn condition. B. had the deed recorded but lost the original. The record description described the land as the "southwest quarter of the southwest half." *Held*, under the evidence that the original deed having been in a worn out condition, that the southwest quarter of the southwest quarter, being the only land owned by A. at the time of the execution of the deed, and the same having been occupied by C., that the court would treat the deed as correctly describing the land.

4. LIMITATIONS—GRANTEE OF LAND—KNOWLEDGE OF EXISTENCE OF DEED.—The statute of limitations does not run against the grantee of land until he knows of the existence of a deed in his favor, where the deed was intentionally withheld from him by the party holding possession of the land.

Appeal from Drew Chancery Court; *Zachariah T. Wood*, Chancellor; reversed.

*Hogue & Heard*, for appellant.

1. The title to the land vested in appellant and she became the owner. The conveyance was beneficial to her and carried with it no burden or duty, no positive act of assent on her part was necessary. It is presumed she assented. Tiedeman on Real Property, § 814. The deed was duly signed and acknowledged and recorded. It was delivered to her father for her. Kirby's Dig. § 756.

2. It was effective to pass the title and its effect as a conveyance was not destroyed by loss or destruction. Kirby's Dig., § 757; 108 Ark. 490.

3. Appellant was an infant of tender years, and delivery to her father vested the title. 113 Ark. 289; 82 *Id.* 492; 86 *Id.* 150; 121 *Id.* 335.

4. She was not barred. The statute only commenced to run when she discovered the deed.

5. The mistake in the description was clearly in recording the deed. 17 Cyc. 443, 641; 13 *Id.* 551; 4 Ore. 225; 34 Ark. 85; 64 *Id.* 544.

*Williamson & Williamson,* for appellees.

1.   The finding of the chancellor is sustained by the evidence and should not be disturbed.

2.   The description is void and could not be reformed.

3.   There is a total failure of proof that Elizabeth Priest ever owned the land. The appellant is barred. The proof fails to show title in appellant, but does show title in appellees.

McCULLOCH, C. J.   Appellant asserts title in this action to a tract of land containing forty acres, situated in Drew County, Arkansas, and described as the southeast quarter of the southwest quarter of section 32, in township 12 south, range 6 west. She claims that the land in controversy was originally owned by her great-aunt, Elizabeth Priest, who, in the year 1872, executed a deed conveying the land to her and delivered the deed to her father, Benjamin A. Priest, but that her father kept the deed without recording it, and that she did not know of its existence until after her father's death in the year 1915.

It was alleged in the complaint that the original deed had been lost, and appellant instituted this action in the chancery court to establish her title under the lost deed. The action is against the widow and the other children of Benjamin A. Priest. Some of the children are still minors, and they, acting through their guardian, and also the widow, have appeared and made defense, denying all the allegations with respect to the title to the land and the conveyance from Elizabeth Priest to appellant. The cause was heard on the depositions of witnesses and other proof, and a final decree was rendered dismissing appellant's complaint for want of equity.

Appellant was born in the year 1870, and the deed in question was executed by Elizabeth Priest in 1872, when appellant was about two years of age. Elizabeth Priest occupied the forty acres in controversy until she died in the year 1885, and immediately thereafter Benjamin A. Priest took possession of the land and resided upon it

until his death, which occurred July 1, 1915. No witness testified to the execution of the deed, or the circumstances attending the same, but appellant introduced testimony to the effect that the deed was found among the papers of Benjamin A. Priest a few weeks before he died. This testimony comes from appellant's brother, who testified that a few weeks before the death of his father, and during the latter's last illness he was at his father's house and assisted in searching for certain papers, and in doing so opened an old trunk and found a deed in what he described as a "dilapidated" condition, in the bottom of the trunk. He says that his father told him that it was the deed which his aunt Elizabeth had made to Jessie (appellant) and he instructed his son after his death to deliver it to appellant. The witness stated that his father explained that the reason he had not given the deed to appellant was that there had been some trouble between them. Witness testified that his father said: "This is the one that Aunt Lizzie gave Jessie. I have not got but a few days to live. After I am buried somebody can send it to her or you can give it to her." Witness stated that he admonished his father that delivery of the deed would cause trouble, and that his father replied, "Well, let it cause trouble," adding in substance, that he didn't care, as he would not "be here to worry any longer with it." The witness further stated that his father told him that he had never owned the land, and that his Aunt Lizzie had bought it from J. J. Bordeau. Witness stated that shortly after his father died he mailed the deed to appellant. The proof shows that as soon as appellant received the deed by mail at Hot Springs, where she was living, she mailed it to another brother, Sam H. Priest, at Monticello, to be recorded, and that it was returned to her by mail after being recorded, and that she lost it. She explained in detail how she happened to lose the deed.

(1) A certified transcript of the record of the deed introduced in evidence, shows the lands to be described therein as follows: "The southeast ¼ of the southwest ½

of sec. 32, township 12, range 6 west, containing forty acres, more or less.''

The above description is an imperfect one and is insufficient as a description of the land in controversy. Therefore the deed is void on its face. The deed is a voluntary gift, and, as there was no delivery made of the possession of the property during the lifetime of the grantor, followed by valuable improvements by or for the grantee, a court of equity will not reform it so as to correctly describe the land. *Smith* v. *Smith,* 80 Ark. 458.

It is insisted, however, on behalf of appellant that the fact is established by the proof that the original deed described the land correctly, and that there is a mistake in the record in using the figure $\frac{1}{2}$ instead of $\frac{1}{4}$ in describing the southwest quarter of the section. We are of the opinion that the proof is sufficient to meet every requirement in establishing the words of description used in the lost deed, and that according to the proof the land was correctly described, but that a mistake was made in recording the deed. The forty acres of land in question was, according to the proof, the only tract of land owned by Elizabeth Priest, and it is clear from the testimony that the deed was delivered to Benjamin A. Priest and accepted by him as a conveyance of this particular land to his daughter, Jessie, who is the appellant in this case. Benjamin A. Priest accepted the deed, and, without recording it, kept it in his possession 43 years. He treated the deed as properly describing the land in controversy, and a short time before his death he handed it to his son for delivery to appellant, his daughter, after his death as a conveyance of this particular land. John R. Priest, the son to whom Benjamin A. Priest handed the deed to deliver to appellant, said that it was old and discolored and in a dilapidated condition, and the other son, Samuel H. Priest, to whom appellant sent the deed to be recorded, testified that the deed was old and worn, and that the figures in the description were on a crease in the fold of the paper so that the paper was worn at that place to such an extent that it was impossible to determine definitely

whether or not one of the figures was a 2 or a 4. He testified that it appeared to him to be the figure 4, but that it might have been a 2. We have, therefore, a case where an old, worn, discolored deed, with the figures in the description almost obliterated so as to render them vague and uncertain, in the possession of the party to whom it was delivered as a conveyance of a certain tract of land, and if the figure in the conveyance be read as the figure 4, which the witness says could be done, would correctly describe this land. Under those circumstances the presumption ought to be indulged, in the absence of proof to the contrary, that Benjamin A. Priest, the man who received the deed into his possession when it was freshly written, and at a time when there could be no mistake as to its contents and treated it as a deed to the land in controversy, and in anticipation of his death handed it to his son for delivery to the grantee as a conveyance of the property in controversy, knew that it correctly described this land, and his statements to his son when he handed over the deed constituted an admission that this was the land described in the deed. The uncertainty arising from the partial obliteration of the figures so as to make it difficult to determine whether the figure used was the figure 2 or the figure 4 ought to raise the presumption, under the circumstances, that the land was correctly described in the deed, and the recognition by Benjamin A. Priest of the deed as a conveyance of the land in controversy affords strong evidence that the description was originally correct. It was the only land owned by the grantor, and it was the land which Benjamin A. Priest took possession of under the deed immediately after the death of the grantor, and the natural inference is that this land was the tract conveyed, and that the deed before it became worn properly described this land.

(2) The rule established by decisions of this court is that declarations of a grantor or former owner of land in disparagement of his title, made after he has parted with the title, are not competent against subsequent holders, but that such declarations made before that time are ad-

missible. *Richardson* v. *Taylor*, 45 Ark. 472; *King* v. *Slater*, 96 Ark. 589.

(4)　The statute of limitations did not begin to run against appellant until she discovered the existence of the deed, where it appears that its existence was intentionally withheld from her knowledge by the party under whom the land is now being held.

Our conclusion is that the testimony was sufficient to establish the conveyance of the land to appellant under a proper description, and that the chancellor erred in failing to render a decree in her favor. The decree is, therefore, reversed and the cause remanded with directions to enter a decree in appellant's favor according to the prayer of the complaint.