JEFFERSON *v.* SOUTER.

Opinion delivered October 3, 1921:

1. MORTGAGES—ABSOLUTE DEED—EVIDENCE.—While equity will permit parol evidence to be introduced to show that a deed absolute in form was intended as a mortgage, the evidence to establish that fact must be clear, unequivocal and convincing.

2. MORTGAGES—ABSOLUTE DEED—EVIDENCE.—For the purpose of ascertaining whether an absolute deed was intended by the parties as a mortgage, the court will consider all the surrounding circumstances, including the value of the land, the price paid, and the acts and declarations of the parties at the time the transaction was had.

3. EVIDENCE—DECLARATION AGAINST INTEREST.—Declarations against interest are admissible against all who succeed to the declarant's interest or who claim under him.

4. EVIDENCE—MATTER OF COMMON KNOWLEDGE.—It is a matter of common knowledge that lands appreciated greatly in value between January, 1912, and January, 1917.

Appeal from Columbia Chancery Court; *J. M. Barker,* Chancellor; affirmed.

STATEMENT OF FACTS.

In January, 1917, J. T. Souter brought suit in the circuit court against Lillie Jefferson to recover possession of 81 acres of land in Columbia County, Ark.

Lillie Jefferson filed an answer, asserting title to the land in controversy and setting up facts tending to show that the transaction with the plaintiff was not an absolute sale of the land to him, but was only intended by the parties as a mortgage. She asked that the cause be transferred to the chancery court, which was done.

According to the testimony of Lillie Jefferson, on the 17th day of December, 1902, L. H. Pearce executed a deed to the land in controversy to Scott Jefferson for the consideration of $240. Scott Jefferson was her husband. As soon as the land was purchased, they moved on it, and Scott Jefferson finished paying for it in January, 1904. They continued to occupy the land

as their homestead until Scott Jefferson died on the 13th day of April, 1914. After his death Lillie Jefferson claimed the land as her homestead and rented it out, but never collected any rent therefor. On the 24th day of December, 1908, Scott Jefferson and Lillie Jefferson, his wife, executed an absolute deed to L. H. Pearce to the land in controversy for the consideration of $301.30. It was intended by the parties that the transaction should be a mortgage to secure Pearce the amount named as the consideration in the deed. On the 4th day of March, 1911, L. H. Pearce and wife executed a deed to George Pickler to the land in controversy for the consideration of $331.42. On February 25, 1911, Scott Jefferson, by an instrument in writing, which was not recorded, notified L. H. Pearce that he had transferred all his interest in the contract concerning the land in controversy made by Pearce to Scott Jefferson and directed Pearce to execute a deed to the land to G. T. Pickler. On the 20th of January, 1912, G. T. Pickler and his wife executed a deed to J. T. Souter to the land in controversy for the consideration of $320. In the spring of 1914, a short time before he died, Scott Jefferson caused a suit to be filed in the chancery court against J. T. Souter for the specific performance of an alleged contract for the purchase of the land in controversy.

The attorney for Scott Jefferson testified that he went to see J. T. Souter about the matter, and that Souter claimed that Jefferson owed him $592; that he made a tender of this amount to Souter; that Souter refused to accept the tender and to make a deed to Scott Jefferson to the land in controversy. The attorney for Scott Jefferson also testified that he dismissed the suit for specific performance in 1916, before the present suit was instituted, and that the land in controversy was worth $1,000 at the time the present suit was brought.

According to the testimony of J. T. Souter, he did not agree with Scott Jefferson to pay off the amount that Jefferson owed Pickler, which was secured by a lien

on the land in controversy, and to receive a deed from Pickler to the land as security therefor. On the other hand, it was intended by the parties that J. T. Souter should receive an absolute deed from G. T. Pickler to the land in controversy, and that the transaction was in no sense to be considered as a mortgage to secure Souter for an indebtedness owed him by Scott Jefferson. At the time the transaction was had, Souter did make a verbal agreement with Scott Jefferson for a resale of the land to him if Jefferson would pay him the amount he had paid for the land together with an account which Jefferson owed him. The whole amount was $592, and Souter would have conveyed the land to Jefferson if the latter had paid him this amount. Souter denied that Jefferson or his attorney had ever tendered him this amount. In the first part of 1914, Jefferson saw that he was not able to pay Souter the $592, and agreed to pay Souter rent for the land thereafter. Jefferson began to trade with another firm that year, and Souter, at the instance of Jefferson, by an instrument in writing, waived his landlord's lien for supplies. After Jefferson agreed to pay rent on the land in 1914, Souter expended $500 in making permanent improvements on the place and thereafter paid the taxes on the land.

The merchant who agreed to furnish Scott Jefferson supplies for the year 1914 testified that, before he would furnish Jefferson, he required Souter to waive his landlord's lien for supplies. Scott Jefferson told the merchant who agreed to furnish him in 1914 that J. T. Souter would not claim anything but the rent, and the merchant had Jefferson to get a statement from Souter to that effect before he furnished him supplies.

The chancellor found the issues in favor of the plaintiff, Souter, and a decree was entered accordingly. To reverse that decree, the defendant, Lillie Jefferson, has duly prosecuted this appeal.

*Joe Joiner* and *Henry Stevens,* for appellant.

In determining whether an instrument which is in form a deed, is a mortgage or a deed, the court will consider the situation of the parties, the property conveyed, its value, the price paid, defeasances, verbal or written, and the acts and declarations of the parties. 112 Ark. 607; 27 *Id.* 404. A deed absolute in form will be treated as a mortgage if the proof of such intent is clear and convincing. 110 Ark. 632. See also, 23 Ark. 479; 193 S. W. 264; 107 Ark. 1; 95 *Id.* 509; 225 S. W. 24, 203 *Id.* 1039; Ann. Cases, 1917C, 974.

The instrument under which appellee holds is a mortgage, and the heirs are entitled to the property on payment of the debt.

*McKay & Smith,* for appellee.

The evidence does not show that Jefferson ever paid Souter anything on the purchase price of the land nor that he took possession pursuant to the contract. Possession alone will not take the case out of the statute of frauds; it must have been taken pursuant to the contract. 206 S. W. 896; 21 Ark. 277; 44 *Id.* 334; 63 *Id.* 100; 75 *Id.* 526; 6 Pomeroy's Equitable Remedies, Vol. 2, §§819, 820. The evidence is uncontradicted that the verbal contract of sale existing between Souter and Jefferson was cancelled prior to the year 1914, and that Souter rented the land to Jefferson. Since appellants did not plead the statute of frauds, they cannot take advantage of the fact that this contract of cancellation was verbal. However, if it was void under the statute of frauds, the fact that Souter took possession and made valuable improvements on the land by building houses is sufficient to take the case out of the statute.

HART, J. (after stating the facts). The deed to J. T. Souter to the land in controversy is absolute on its face. While equity will permit parol evidence to be introduced to show that the transaction was intended as a mortgage, in order to overcome the presumption of law and show from the absolute form of the deed that the

transaction was intended by the parties as a mortgage, the evidence must be clear, unequivocal and convincing. *Wimberly* v. *Scroggin,* 128 Ark. 67, and *Snell* v. *White,* 132 Ark. 349.

According to these and other decisions of this court, for the purpose of ascertaining the true intention of the parties, the court will consider all the surrounding circumstances, including the value of the land, the price paid, as well as the acts and declarations of the parties at the time the transaction was had.

Tested by this rule, it can not be said that Lillie Jefferson showed by clear, unequivocal and convincing testimony that the deed to the land in controversy to J. T. Souter was intended to be treated by the parties as a mortgage. On the one hand, Lillie Jefferson testified that her husband induced J. T. Souter to pay off an indebtedness against the land and to take an absolute deed thereto as security. On the other hand, Souter denied that he made such an agreement with Scott Jefferson, and testified that it was intended that the deed should be an absolute one. He admitted, however, that he made a verbal agreement with Scott Jefferson for a resale of the land if Jefferson would pay him back the purchase money and an account for supplies which he owed him. Souter received a deed to the land on the 20th day of January, 1912. He waited on Jefferson during the years 1912 and 1913 to carry out his contract to repurchase the land. Jefferson failed to carry out his part of the contract for the repurchase of the land, and it was then agreed that Jefferson should begin to pay rent for the land. Souter is corroborated by the testimony of the merchants who agreed to furnish Jefferson with supplies in 1914.

The merchant testified that Jefferson told him that Souter only claimed a lien for rent and would waive his landlord's lien for supplies. The declaration of Jefferson to the merchant was against his interest and is ad-

missible against his successors in interest and all who claim under him. *Russell* v. *Webb,* 96 Ark. 190, and *Strickland* v. *Strickland,* 103 Ark. 183.

It is claimed that the testimony of Lillie Jefferson is corroborated by the fact that the consideration agreed to be paid for the land was grossly inadequate. Counsel point to the fact that Souter only claimed $592 and that the land was worth $1,000. Souter purchased the land in January, 1912, and the testimony showing the land to be worth $1,000 referred to the time when the present suit was brought, which was in January, 1917. It is a matter of common knowledge that lands appreciated greatly in value during the period of time referred to, and the alleged inadequacy of price is not, under the circumstances, of any weight in determining whether the transaction was an absolute sale or not.

It is true that the testimony of Lillie Jefferson is corroborated by the attorney who testified that he had made a tender of the amount claimed to be due by Souter, and that the latter had refused to accept the tender and execute a deed to Jefferson to the land. The testimony is in direct and irreconcilable conflict, and Lillie Jefferson failed to establish her claim by that clear, unequivocal and convincing testimony which is required under the settled law in this State.

It follows that the decree must be affirmed.