WILKINS *v.* ENTERPRISE TV, INC.

5-2021                                              333 S. W. 2d 718

Opinion delivered April 4, 1960.

*Jeff Duty, Charles Gocio,* for appellant.

*Charles Bass Trumbo, E. J. Ball,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a $10,000 judgment awarded to Enterprise TV, Inc., appellee, against Gilbert M. Wilkins and Gilbert and Company, appellants, in the Benton Circuit Court.

The facts are as follows: On March 21, 1955, Wilkins sold his coin machine business, called Ace Novelty, to appellee. The sales agreement contained this proviso:

"The Seller promises and agrees that he will not operate in competition with the Buyers or their assigns at any time any coin machine route in Crawford, Washington, Benton and Madison Counties, Arkansas, or within a radius of fifty miles of Fayetteville, Arkansas, either directly or indirectly as an individual, partnership, corporation, employee, or through any other type of business organization, it being understood that the Seller will refrain from competing in any way or manner with the business enterprises which are now owned directly or indirectly by the Buyers or either of them or which may be hereafter acquired by said Buyers or either of them."

On June 8, 1955, appellee instituted suit in the Chancery Court of Benton County against Major Industries, Inc., Eugene Meese, Gilbert M. Wilkins, and J. Marcus Hedrick, alleging that the defendants had breached the sales contract with appellee, said breach consisting of competing routes and locations in violation of the agreement. On January 30, 1957,* the Benton Chancery Court entered its decree, pertinent portions hereto providing as follows:

". . . after hearing the evidence introduced by the parties and at the conclusion of the testimony, the plaintiff moved the court to dismiss the complaint

---

* Entered nunc pro tunc as of January 3, 1957.

against the defendants Major Industries, Inc., and Eugene Meese and said defendants moved the court to dismiss the cross complaint against plaintiff.

Whereupon the court dismissed the plaintiff's complaint against the defendants Major Industries, Inc., and Eugene Meese, with prejudice, and dismissed the cross complaint of the defendants, Major Industries, Inc., and Eugene Meese as against the plaintiff, with prejudice, and on motion of the plaintiff, non-suit was taken by plaintiff as to the defendants, Gilbert M. Wilkins, all at the cost of the plaintiff.

IT IS, THEREFORE, considered, ordered and adjudged by the court that the plaintiff's complaint as against the defendants, Major Industries, Inc., and Eugene Meese, be and is dismissed, with prejudice, and that the cross-complaint of the said defendants as against the plaintiff be and is dismissed with prejudice, and that the plaintiff's complaint as against the defendant, Gilbert M. Wilkins, is dismissed, without prejudice, all at the cost of the plaintiff.''

Thereafter, on January 9, 1958, Enterprise TV, Inc., filed the instant suit in the Benton Circuit Court against Wilkins, alleging the breach of the sales agreement, and further alleging the fraudulent conveyance of real estate owned by Wilkins to Gilbert and Company as a means of defrauding appellee. Evidence of appellee was directed to the fact that Wilkins was actually the sole owner of Major Industries, and was in competition with appellee contrary to the terms of the agreement. Appellant's proof was to the effect that he held no interest in the corporation, and had violated no agreement.

For reversal, appellant urges two points, as follows:

''I.

The Findings and Decree of the Chancery Court on January 3rd, 1957, Constituted an Adjudication of the Controversy Between the Parties and is *Res Adjudicata* in the Instant Suit.

## II.

The Court was in Error in the Admission of Hearsay Testimony by the Witness Effie Meese on Behalf of the Plaintiff, Prejudicial to the Defendants.''

We proceed to a discussion of these contentions in the order listed.

## I.

Appellants argue that the Chancery Court, in dismissing the complaint with prejudice against Major Industries and Meese, necessarily found that they were guilty of no wrong doing toward appellee, and that this finding inures to the benefit of Wilkins, since the complaint alleged that Major Industries, Inc., was an *alter ego* of Wilkins. We do not agree. This action was based upon breach of contract, and only Wilkins was a party to the agreement. Accordingly, there was no privity of contract between any of the other defendants in the original suit and Wilkins relative to this agreement. The relevant portion of § 27-1405, Ark. Stats. Anno. (1947), provides:

''An Action may be dismissed without prejudice to a future action:

First. By the plaintiff before the final submission of the case to the jury, or the court, where the trial is by the court.''

Appellee had every right to take the non-suit, and there being no privity between Wilkins and the other defendants in the sales agreement, the Chancery decree could not be a bar to the present action.

## II.

Effie Meese is the widow of Eugene Meese, who died March 7, 1957. According to her testimony, for the period that Major Industries, Inc., was engaged in business, her husband was president, she was vice-president, and their oldest daughter, secretary. She stated that

at the outset, her husband was working in Bentonville;[1] that he came home from work one afternoon and told her about the organization that was planned, "He said they were going to start up a route down here to be known as the Major Industries or Gene's Amusements, and he explained that they had to have three officers and that he was one, and I was one and Reba, that's my daughter, was the other one, and he made it out that way and brought the papers home. He didn't ask me about it, he just did it. I didn't know it, I went ahead and signed it and let it go at that. * * * He said he was going to get $70.00 a week, and he said Mr. Wilkins told him he would give him 5% of the profit, or the income, however he stated it, that's what he meant, of what the route made in a year. Q. Do you know, Mrs. Meese, who paid your husband for services that were rendered in getting this route started for Major Industries, Incorporated? A. Well, at the time— between the time, the route was sold once and started again, he was paid a weekly salary by Mr. Wilkins. Q. Did you see the checks that were given him? A. I always took them to the grocery store and got groceries every week. Q. Do you know what they were for? A. They were for $60.00 and at the time the route started, they were raised to $70.00 a week. Q. Did you notice who signed the checks, who they were drawn on, if you remember? A. Well, all the time, up until the time Major Industries started, it was Ace Novelty." This testimony was objected to by appellants as hearsay evidence and inadmissible. Mrs. Meese further testified that she heard several telephone conversations between Wilkins and her husband relating to the business; that following the death of her husband, she took all papers (stock certificates) to Wilkins' office in Joplin, Missouri, and "signed" them, and also signed over the title to a truck, which had been purchased by Mr. Meese as an officer of Major Industries. Further,

"Q. Do you recall any other incidents or time or places your husband told you anything concerning the

---

[1] Meese had worked for Wilkins for four or five years prior to the establishment of Major Industries, Inc.

agreement of Gilbert Wilkins not to compete with this Enterprise TV? A. Yes, many a time he talked about that, that he wasn't supposed to, and when they started Major Industries, he told me how it was, he was going to do the work but it belonged to Gilbert, and of course he kept that from the customers, kept them from knowing it, none of them knew it."[2]

According to her evidence, she received no compensation when the properties were turned over at the office.

Appellants argue that in admitting the evidence of what Meese was supposed to have told his wife, the court admitted evidence that was entirely incompetent, and highly prejudicial to Mr. Wilkins.

Of course, the evidence was hearsay, and the only question is whether it comes within one of the exceptions to the hearsay rule. A rather thorough discussion is found in an article by Dr. Robert A. Leflar, "Theory of Evidential Admissibility—Statements Made Out of Court", found in 2 Ark. L. R., 26, 41 (1947-48). Under the sub-heading, "Declarations Against Interest", Dr. Leflar states:

"Another exception dating from the early days of the Hearsay Rule is that which admits declarations made against the interest of the declarant. It is well settled that to be admissible under this exception the statement must have been against the declarant's interest when he made it. That fact being present, a high degree of reliability in the statement made is obviously assured. People do not deliberately make statements contrary to their own interests unless truth impels them to do so. The guaranty of trustworthiness for such extrajudicial statements is about the same as if the declarant were

---

[2] Mrs. Meese admitted that her husband had testified in the Chancery action that Wilkins had no interest in the business, but she stated that the testimony was false, and that her husband had told her of his testimony before the court ... "he was for Gilbert, he was working for Gilbert and expecting to get the pay, the 5% profit. * * * He was going on with him through the deal he started with, I guess you'd say. He started in the beginning to make wages to support us, like any other man." The testimony of Meese in the Chancery case was introduced into evidence.

present in court for cross-examination. The degree of reliability being as high as it is, it would seem that such declarations should be admitted in evidence whenever necessity is established by the declarant being for any reason unavailable. Actually, the cases have not gone that far; death or absence from the jurisdiction is usually required."

Again, in "Wigmore on Evidence", Vol. 5, 3rd Edition, paragraph 1465, page 271, it is stated:

"Since the principle is that the statement is made under circumstances fairly indicating the declarant's sincerity and accuracy it is obvious that the situation indicates the correctness of whatever he may say while under that influence. In other words, the statement may be accepted, not merely as to the specific fact against interest, but also as to *every fact contained in the same statement.*"

In C. J. S., Vol. 31, § 217, page 959, we find the requirements that render a declaration against interest admissible:

"(1) Declarant must be unavailable as a witness. (2) The declaration must have related a fact against the apparent pecuniary or proprietary interest of declarant when his statement was made. (3) The declaration must have concerned a fact personally cognizable by declarant. (4) The circumstances must render it improbable that a motive to falsify existed."

The testimony in the instant case meets the requirements of admissibility. Without passing on the matter of what constitutes "unavailability", it is certainly apparent in this case that the declarant was unavailable, for he was dead. The declaration admitted, related to a fact against the apparent pecuniary or proprietary interest of Mr. Meese when the statement was made, for, ostensibly, and on the record, he was the president and principal stockholder of the corporation, while, under his declaration, he was only a salaried employee, without any control of the business. The declaration certainly concerned facts personally cognizable to declarant,

and no motive for Mr. Meese to make a false statement to his wife appears in the record.

Finding no merit in appellants' contentions for reversal, the judgment is affirmed.

McFADDIN, J., dissents.