HOME INSURANCE CO. v. ALLIED TELEPHONE CO., ET AL

5-4897                                    442 S.W. 2d 211

Opinion Delivered May 26, 1969
[Rehearing denied July 14, 1969.]

*Terral, Rawlings, Matthews & Purtle* for appellant.

*McMillen, Teague, Bramhall & Davis* for appellees.

J. FRED JONES, Justice.   Olin S. Payte sued Allied Telephone Company in the Pike County Circuit Court for property damages growing out of an automobile collision.   Olin S. Payte died during the pendency of the action and Home Insurance Company, who had paid the collision loss to Payte under an insurance contract it had with him, was substituted as party plaintiff under its subrogation agreement with Payte.   A jury trial resulted in a judgment for Allied.   Home Insurance has appealed and relies on the following points for reversal:

> "That the Court erred in allowing the defendant to testify to self-serving, hearsay statements

made by the driver of plaintiff's motor vehicle, a bailee.

That the Court erred in refusing to give the plaintiff's instruction on the Arkansas law pertaining to the imputation of negligence from bailee to bailor."

The recorded facts are as follows: Johnny Payte was the son of Olin Payte, and on March 9, 1967, between 9:30 and 10:00 a.m., Johnny Payte was driving an automobile registered in his father's name north on a county road in Pike County and Johnny's wife was riding as a passenger in the front seat with him. As he drove over a "rise" in the highway, a truck belonging to appellee and being driven by its employee, Richard Ray, was traveling south meeting the Payte automobile. According to the uncontradicted testimony of the investigating officer, the Payte vehicle skidded fifty-four feet and the appellee's vehicle skidded ten feet, and the two vehicles collided with the point of impact being about one foot and four inches east of the center line, and on Payte's side of the road. The traveled portion of the gravel road was sixteen feet and six inches wide at this point. The Payte automobile was damaged in the amount of $925.00. The police officer testified that appellee's truck was over the center line of the highway and that from his investigation at the scene of the collision, he was of the opinion that the Payte automobile was traveling too fast for the conditions of the highway.

Mrs. Payte testified that as she and her husband came over a rise in the highway, the appellee's vehicle was in the center of the road "a little on our side." She testified that her husband was driving about thirty miles per hour. Mrs. Payte was asked and answered questions as follows:

"Q. Where were you going at the time of the collision?

A. We had just gotten off from school, and we were going to my mother's—to my mother-in-law's house.

\* \* \*

Q. Who was the registered owner of this car at the time of the collision?

A. Olin S. Payte.

Q. Who is he?

A. He's my father-in-law.

Q. Were you on an errand for him?

A. No, sir. .

Q. You were on your own personal business?

A. Yes, sir."

The above questions and answers by Mrs. Payte are the only evidence in the record pertaining to the agency relationship between the owner and the driver of the automobile. If the pronoun "you" in the questions was used or understood in the singular, it shed no light at all on the agency relationship between the driver and the owner. If the question was asked and understood in the plural, the answers could have been interpreted to say that Mrs. Payte and her husband, who was driving an automobile registered in his father's name, had just gotten off from school at 9:30 in the morning and had started to Mrs. Payte's mother-in-law's house on their own personal business and not on an errand for her husband's father. Be that as it may, the whole case was tried on the theory that Johnny Payte was a permissive bailee of the automobile and there was no evidence to the contrary.

One subpoena was issued for Trooper Rex Martin. Johnny Payte and Mavis Payte. It was served on Mr. Martin and Mrs. Payte, but was not served on Johnny Payte and he did not testify at the trial. Mr. Ray, the driver of appellee's truck, was permitted to testify as to statements made to him by Johnny Payte following the collision. This testimony was offered and admitted as admissions against interest and it was objected to because Johnny Payte was not a party to the lawsuit and as being self-serving if he were. What the objection actually amounted to was that it was inadmissible as hearsay evidence. The testimony of Mr. Ray as to what Johnny Payte said to him and the objections made to it are copied from the record as follows:

"Q. I should have asked you one other question. Mr. Ray, since the accident on more than [one] occasion have you had conversation with Mr. Payte, the driver of that automobile?

MR. OSTERLOH:

I am going to object to any conversation he had with Mr. Payte, the driver. He isn't a party to this lawsuit and has never been.

MR. STEEL:

He was the driver of the car, and any admissions made against his interest, I think, are certainly admissible.

MR. OSTERLOH:

And they are self-serving, Your Honor.

THE COURT:

Overruled. You may answer.

Q. (Con'd. by Mr. Steel) You may answer the question that I am about to ask—what conver-

sation you had with him as to whose fault it was.

A. Well, right after the accident we went to the hospital, and I saw him in the hospital. He came over and asked how I was, if I was doing all right, and he said something about it looked like we were at the right place at the wrong time.

Q. Now, since that time, were you working along the road, and did he stop and talk to you?

A. Yes, sir.

Q. What did he tell you then?

A. I don't remember the exact words, but it was just like, in so many words he said it was something that couldn't be helped.

MR. OSTERLOH:

I object, Your Honor.

THE COURT:

Yes, sir. You will have to repeat the conversation as you remember it, not what you think it was.

Q. (Con'd. by Mr. Steel) Do you remember the exact words he used, Mr. Ray?

A. He said, 'It looks like it was something that couldn't be helped.'"

We are of the opinion that the trial court should not have admitted the statement as an *admission* against interest in the absence of evidence that Johnny Payte had actual, or implied, authority to make such admission.

The record reflects, however, that Johnny Payte was a bailee of the automobile at the time of the collision and as such would have been liable to the owner for any damage to the vehicle caused by his own negligence.

In determining the admissibility of statements into evidence as exceptions to the hearsay rule, there is a distinction between *declarations* against interest and *admissions* against interest. In vol. 2, Ark. L. Rev., pages 26-52 (1947-48) appears an article by Dr. Robert A. Leflar entitled "Theory of Evidential Admissibility—Statements Made Out of Court," and under subheading "Declarations Against Interest" at page 41, Dr. Leflar states:

"Another exception dating from the early days of the Hearsay Rule is that which admits declarations made against the interest of the declarant. It is well settled that to be admissible under this exception the statement must have been against the declarant's interest when he made it."

And under subheading "Admissions by a Party or One in Privity" Dr. Leflar says:

"When it is shown that a party has made a statement inconsistent with the position taken by him in the present suit, the statement so made is admissible in evidence as an 'admission.' It is substantive evidence, both in civil and criminal cases, of the facts admitted in the statement."

And then on page 43 Dr. Leflar continues:

"It is easy to confuse the admission rule with that admitting declarations against interest. Many extrajudicial statements might be admitted in evidence equally under either rule. For example, a statement made by a person to or through whom a party traces his present interest is admissible against that party as the admission of one in privity with him, and the same statement would frequently

be a declaration against the interest of the one who made it. [citing *Rotan* v. *Nichols*, 22 Ark. 244 (1860); *Peters* v. *Priest*, 134 Ark. 161, 203 S.W. 1042 (1919); *Jefferson* v. *Souter*, 150 Ark. 55, 233 S.W. 804 (1921)]. There are differences, however. A *declaration* against the interest of the one who made it is always admissible, regardless of who he is, but for a statement to be admissible as an *admission* it must have been made by a party to the litigation or his authorized agent, or by one having identity or privity of interest in the matter in respect to which the statement was made. [citing 4 Wigmore, Evidence, secs. 1076-87 (3rd ed., 1940)]. And for a statement to be admissible as a declaration against interest, the declarant must be dead or at least unavailable, but admissions by parties, their agents and privies are admissible in evidence even though the declarant be physically available, even to the extent of being personally in the courtroom, as is often the case. Likewise, the admissions of an agent, made within the scope of his authority to speak for his principal, are admissible against the principal, even though they are not declarations against the personal interest of the declarant himself. They are admissible as admissions, but not as declarations against interest." (Emphasis supplied.)

See also *Wilkins* v. *Enterprise TV, Inc.*, 231 Ark. 958, 333 S.W. 2d 718.

We conclude, therefore, in view of young Payte's potential liability, that any statements made by him absolving another party of fault for the damage inflicted, could not be said to be self-serving and such statements were admissible as declarations against interest if Johnny Payte was not available as a witness. The burden was on the appellee to show that Payte was not available, but a specific objection to the introduction of testimony because of failure to lay the proper foundation

must be made before it can be said that admission of the testimony was error. *Smith* v. *State,* 243 Ark. 12, 418 S.W. 2d 627. The reason for this rule is that otherwise the court is not apprised of the deficiency and the adverse party is not given an opportunity to supply it. We conclude, therefore, that the admission of the declarations of Johnny Payte did not constitute error.

The appellant's proposed instruction does not appear in the record as such, but in chambers the appellant's attorney made the following statement:

"My proposed instruction reads that 'any negligence on the part of the defendant entitles the plaintiff to recover one-hundred per cent of whatever damages he suffered.' Now, the Judge has refused to give this, and I would like to object because this leaves me without an instruction as to the law of bailments insofar as negligence is concerned—the imputation of negligence from bailee to bailor, and the law of Arkansas states that the negligence is not imputable."

The trial court did not err in refusing to give this instruction. Negligence is not compensable in damages unless the damage is caused by the negligence, or the negligence is a proximate cause of the damage. The trial court did give instruction No. 4, as follows:

"In this case, the Home Insurance Company claims damages from Allied Telephone Company, and has the burden of proving each of these essential propositions:

First, that it has sustained damages.
Second, that Richard Ray was negligent.
And third, that such negligence was a proximate cause of the damage to the Payte vehicle.

If you find from the evidence in this case that each of these propositions has been proved, then your verdict should be for the Home Insurance Company; but if, on the other hand, you find from the evidence that any of these propositions has not been proved, then your verdict should be for Allied Telephone Company."

The judgment is affirmed.

Byrd, J., dissents.