Worth James Construction Company, a Corporation v. Jean Herring

5-4135                                    412 S. W. 2d 838

Opinion delivered March 13, 1967

[Rehearing denied April 17, 1967.]

*Smith, Williams, Friday & Bowen* by *Boyce R. Love,* for appellant.

*Patten & Brown* by *Gerland P. Patton,* for appellee.

J. FRED JONES, Justice. We are called on here to determine whether the trial court abused its discretion in setting aside a verdict and granting a new

trial on motion of the appellee who had been awarded $2,500.00 in an action for personal injuries. Indeed we are *called on* to determine whether or not the trial court even had any discretion in the matter where the action is for injury to the person, but having concluded that the verdict should have been set aside and a new trial granted for error in instruction, the trial court's discretion becomes a minor issue.

Mrs. Jean Herring filed suit in the Pulaski County Circuit Court against Worth James Construction Company alleging damages for personal injuries as a proximate result of the negligence of defendant's truck driver in driving defendant's truck into the rear of plaintiff's automobile as she slowed down to make a right hand turn from the highway.

The case was tried to a jury and a verdict was returned for plaintiff in the amount of $2,500.00. The verdict was set aside by the trial court and a new trial granted on motion of the plaintiff, for the reason that the verdict was contrary to the law, contrary to the evidence, contrary to the law and the evidence, and for the further reason that an instruction given by the court over the objection of the plaintiff, was error. The defendant has appealed and relies on one point:

"It was error for the trial court to set aside the verdict and judgment in favor of appellee and grant her a new trial."

On November 23, 1964, the appellee and the appellant's driver were diving their respective vehicles the same direction on Rodney Parham Road in Pulaski County with appellant's truck behind appellee's automobile. Appellant's truck driver "speeded up" to cross a bridge before an oncoming automobile came onto the bridge and after observing appellee slowing down ahead of him in preparation to turn from the roadway, appellant's driver skidded the truck sixty-six feet in an ef-

fort to stop, but was unable to avoid striking appellee's automobile.

Appellee experienced neck, head and shoulder pains immediately following the collision. She was nervous and upset and the following morning she was vomiting and went to the doctor who prescribed muscle relaxants and medication for pain and to induce rest. This condition persisted and about two and a half weeks later appellee developed a "lump" or choking sensation in her throat which was also associated with vomiting. She also began experiencing low back pain, as well as the continued pain in the shoulders, head and neck.

The appellee in this case had injured her neck in an automobile accident in January 1961. She had injured her back trying to start a power lawn mower on July 19 or 20, 1964, and she had experienced a period of vomiting over a period of a week to ten days during November and December 1961.

On December 27, 1964, appellee was operated on for hiatal hernia and on March 1, 1965, for herniated intervertebral disc in the lumbar area of the back. The medical evidence is to the effect that neither of these conditions was *caused* by the collision of November 23, 1964, but that the symptoms of both conditions were *aggravated* by the collision.

In connection with appellee's operation for the hiatal hernia, an incision was made from beneath the left breast to the right side of the abdomen. An additional incision was made in the left side through which a tube was inserted into the stomach for drainage following the operation, and appellee was fed intraveneously for a period of five days.

About the second or third day following the operation, appellee noticed the loss of sensation in two fingers on her right hand. The evidence is uncontroverted that

this symptom was attributable to an injury in the nature of a bruise to the ulna nerve and the severity of this condition continued to increase until by April 14, 1965, there was an 80 to 100 per cent loss of the function of the ulna nerve in appellee's right arm. Although there had been considerable improvement, the function of this nerve had not been completely restored at the time of trial, and this damage to the ulna nerve was an element of damage alleged by appellee in her amended complaint.

> Appellant answered that the injury to the ulna nerve "was a result of the improper positioning of the plaintiff on the operating table in the recovery room or in her bed all in the course of or subsequent to an operation for a hernia repair which took place on December 30, 1964, and the improper positioning was an intervening event completely independent of any conduct of the defendant or its agents, and no act of the defendant or its agents was a proximate cause of said damage."

Dr. Kenneth Jones and Dr. Jack Downs were the only doctors who had treated the appellee and were the only doctors who testified at the trial.

As to the ulna nerve injury, Dr. Jones testified that he didn't see appellee when she first developed the ulna nerve symptoms and that he didn't know how it came on, but that he couldn't explain it on the basis of a rear end collision; that it came on during the period of time appellee was in the hospital for hernia surgery and that it is reasonable to assume something happened during that period of time. That any patient who is confined to bed may encounter these complications from simply being in bed and pushing themselves about.

As to the ulna nerve injury, Dr. Downs testified that several days, he didn't remember exactly how many days,

"* * *after Mrs. Herring's surgery she complained

of some numbness and loss of sensation of the distribution of her right ulna nerve and that is something that happens on occasions, occasionally in bedfast patients and there is not really anything that can be done about it. It is due to the pressure that is put on the nerve either from lying still with one arm extended for perhaps intravenous medication running in the arm or scooting around on the elbows in bed.''

\* \* \*

''I think it is calculated risk or hazard like any other hazard the patient assumes or risks that they assume when under surgery or enter the hospital or become immobile, it is a hazard of having to lie down and be still.''

Dr. Downs testified that it would be a fair assumption that the injury to the ulna nerve arose out of the surgery and treatment for the hiatal hernia, and on cross examination, Dr. Downs testified as follows:

''Q  All right now just briefly now about this ulna nerve problem. I believe that you told me when I took your deposition that the ulna nerve problem probably dates back to the incident that occurred on the operating table, in the recovery room or within a few days after the operation while still in bed. Is that correct?

A  Yes.

Q  How would that generally happen, by the elbow getting on a sharp place and putting pressure on the nerve. Is that correct?

A  It wouldn't have to be a sharp place. The ulna nerve is very superficial at the back side of the elbow and pressure on a mattress or anything pressure on the nerve in that area for a while. We don't know exactly how long it takes to

bruise the nerve and again there are all degrees of this thing which would cause the injury.

Q  You don't mean a flat curve, you mean a corner?

A  Well probably a corner.

Q  Normal lying in bed would not cause this?

A  I think if you had a patient who was scooting around on their elbow in bed as patients certainly do after surgery that might be of sufficient severity to cause it. It is hard to pin the thing down.

Q  I know but just the arm lying in normal position on a bed would not cause it?

A  I think if that arm was pinned down with intravenous solution running in it for two or three hours it certainly would cause it."

At the close of the evidence, including the above medical testimony, as appellee's requested instruction No. 9, the court gave A. M. I. instruction 501 on "proximate cause" as follows:

"The law frequently uses the expression 'proximate cause,' with which you may not be familiar. When I use the expression 'proximate cause,' I mean a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred.

"[This does not mean that the law recognizes only one proximate cause of damage. To the contrary, if two or more causes work together to produce damage, then you may find that each of them was a proximate cause.]"

And over appellee's objections, the trial **court gave**

as appellant's instruction No. 4, A. M. I. instruction No. 503, as follows:

> "If, following any act or omission of a party, an event intervened which in itself caused any damage, completely independent of the conduct of that party, then his act or omission was not a proximate cause of the damage."

The appellant first argues that as a matter of law the trial court had no discretion in setting the verdict aside and granting a new trial in this case, and in support of its argument, cite the following cases:

> "*Woodard v. Sanderson*, 83 Ok. 173, 201 P. 361; *Sharpe* v. *O'Brien*, 39 Ind. 501; *Metropolitan Street R. Co.* v. *O'Neil*, 68 Kan. 252, 74 Pac, 1105; *Blakely* v. *Omaha & C. B. Street R. Co.*, 94 Neb. 119, 142 N. W. 525."

Ark. Stat. Ann. § 27-1901 (Repl. 1962) defines "new trial" and sets out eight grounds for a new trial, the fifth one being as follows:

> "Fifth. Error in the assessment of the amount of recovery, whether too large or too small, where the action is upon a contract or for the injury or detention of property."

The next section, Ark. Stat. Ann. § 27-1902 (Repl. 1962) is as follows:

> "A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, nor in any other action where the damages shall equal the actual pecuniary injury sustained."

The Oklahoma, Indiana, Kansas and Nebraska statutes under which the cases cited by appellant were de-

cided, contained the same provision as Ark. Stat. Ann. § 27-1902 supra, and the Supreme Courts of those states interpreted this provision exactly as appellant argues that we should interpret it in this case.

This provision in many of the state statutes was a carry over from the common law, and in Oklahoma, Indiana, Kansas and Nebraska, has been changed or repealed by later statutory enactment. (See also *Drury* v. *Franke,* 247 Ky. 758, 57 S. W. 2d. 969).

We are cited no case, and have found none, in which this court has followed or refused to follow the decisions of the Oklahoma, Indiana, Kansas and Nebraska Courts in their interpretation of this provision of their statutes, and because of the rule laid down in our own decisions, where *other error* appears in the record, we find it unnecessary to follow, or refuse to follow, the decisions from other states in this case.

In a case such as this, however, *where no other error appears in the record,* we think out statute § 27-1902 might well be interpreted to mean that

> "a new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation (*where injury is not susceptible of definite pecuniary measurement such as in mental anguish, pain and suffering or damage to the reputation*) nor in any other action where the damages shall equal the actual pecuniary injury sustained."

It does not follow that such interpretation should necessarily apply however, where the injury *is* susceptible of definite pecuniary measurement such as in loss of earnings and medical expense, and where the *amount of the verdict* may be based on comparative negligence. *Sterns M. Law Jr.* v. *Scottie Collins et ux,* 242 Ark. 83, 411 S. W. 2d 877.

This court has held that a verdict for one dollar amounts to a denial of damages in an action for damages to the person where the proven pecuniary damage amounted to much more than that, and that such verdict should be set aside and a new trial granted. *Dunbar* v. *Cowger,* 68 Ark. 444, 59 S. W. 951; see *Carroll* v. *Texarkana Gas & Electric Co.,* 102 Ark. 137 (where, however, property as well as personal injury was involved).

We have consistently held that it is not error to grant a new trial on the motion of a plaintiff who has been awarded damages for injury to the person where other reversible error appears in the record.

In the recent case of *Linxwiler* v. *El Dorado Sports Center, Inc.,* 233 Ark. 191, 343 S. W. 2d. 411, Billy Linxwiler received a gunshot wound through the negligent act of the defendant's employee. The appellant, Billy's father, sued to recover for the medical and hospital expenses incurred as a result of the wound and also for the injuries sustained by his son. There was a jury verdict for Billy's personal injuries in the amount of $1,400.00, but no award was given the father in his own right. Both parties. appealed.

The trial court had erred in its instruction pertaining to the duty by the owner of the premises to one who goes on the premises as a volunteer, and in that case this court said:

> "Upon the direct appeal Linxwiler, both in his own right and as his son's next friend, relies for reversal upon the rule that a plaintiff may complain of an inadequate judgment if the record discloses other error of a substantial and prejudicial nature. *Smith* v. *Arkansas Power & Light Co.,* 191 Ark. 389, 86 S. W. 2d. 411. This verdict must fairly be regarded as inadequate. Young Linxwiler suffered much pain, underwent an operation, and spent two weeks in a hospital. The injury has resulted in a slight but per-

manent malfunctioning of his right eye. It is shown without dispute that the medical and hospital expenses were more than $875. In view of the inadequacy of the verdict the appellant is entitled to assert other errors."

In the case of *Smith* v. *Arkansas Power & Light Company,* 191 Ark. 389, 86 S. W. 2d. 28, the appellant's automobile and appellee's street car collided causing injury to plaintiff's person. The jury returned a verdict for $5,000.00. The plaintiff appealed on the ground that error in the trial court resulted in damages grossly inadequate to compensate for his injuries. The trial court had committed error in failing to give a proper instruction, and this court in that case said:

"When the undisputed evidence shows that plaintiff is entitled to recover substantial damages, a judgment will be reversed which awards only nominal damages, because a judgment for nominal damages is, in effect, a refusal to assess damages. When substantial damages are awarded, a judgment will not be reversed because of inadequacy, if there be no other error than that committed by the jury in measuring the damages. But a judgment even for substantial damages will be reversed where the undisputed testimony shows the damages to be inadequate, if error of a substantial and prejudicial nature was committed at the trial of the case. This is on the theory, as was said in the *Kimbrough* case, *supra*, that but for such error damages might have been properly assessed."

Later in the same case this court stated:

"Yet notwithstanding these facts, we would not, under the authority of the cases above cited, reverse the judgment for its inadequacy of compensation if the record contained no prejudicial error except that of assessing the damages, inasmuch as substantial

damages were awarded. But, if there was other error of a material and prejudicial nature, the judgment must be reversed, notwithstanding the award of substantial, and not nominal, damages."

See also *McAdams* v. *Stevens*, 240 Ark. 258.

So, in the case at bar, we conclude that under the evidence in this case, the injury to appellee's ulna nerve was not an "intervening cause" as contemplated in A. M.I. instruction No. 503, and as given by the trial court as appellant's instruction No. 4. (See 65 C.J.S. 111-113 and the numerous cases there cited).

In the case of *Reggs* v. *Akers Motor Lines*, 63 S.E. 2d. 197, the North Carolina Court said:

"A superseding intervening cause is one which operated in succession to a prior wrong, as the proximate cause on an injury. 38 A.J. 772. The test of the sufficiency of an intervening cause to defeat recovery for negligence is not to be found in the mere fact of its existence, but rather in its nature and the manner in which it affects the continuity of operation of the primary cause, or the connection between it and the injury."

In the California case of *Gibson* v. *Garcia*, 216 Pac. 2d. 119, the court said:

"It is well settled that proximate causation is not always arrested by the intervention of an independent force. If the original negligence continues to the time of injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate concurring cause for which liability may be imposed."

In the Wisconsin case of *Mertino* v. *Mutual Service Casualty, Ins. Co.*, 127 N.W. 2d. 741, we find this statement:

"Essentially in order for the intervening Act of negligence to constitute a superceding cause it must be such that the conscience of the court would be shocked if the first actor were not relieved from liability."

In the case of *Butler* v. *Arkansas Power & Light Company,* 186 Ark. 611, the plaintiff received injuries while alighting from appellee's street car. The complaint alleged that the street car started up prematurely, and negligence by the motorman for raising the car's step tripping her. This court speaking in regard to intervening cause, said:

"There was testimony tending to show that the passenger's condition had been made worse by her conduct and confinement since her fall. Such testimony might have some relevancy on the question of the measure of damages, but it could not affect the question of the negligence of the carrier. The negligence of the carrier either caused the passenger to fall, or it did not cause her to fall, and the question of its negligence in this respect cannot be determined by a consideration of the subsequent conduct of the injured party."

As stated by the Supreme Court of Oklahoma in the case of *Kansas City, M. & O. Ry. Co., et al* v. *Allums,* 271 Pac. 949:

". . . the showing for a reversal should be much stronger where the error assigned is the granting of a new trial than where it is a refusal."

So, we conclude as in the *Butler* case, *supra,* that appellee's hiatal hernia either was or was not caused or aggravated to the point of hospitalization and surgery by appellant's negligence, and that the question of negligence in this respect cannot be determined by a consideration of the subsequent conduct of appellee in scoot-

ing around on her elbow or lying still in bed, or by having her arm extended for intravenous feeding while undergoing or recovering from surgery for repair of the hernia.

We are of the opinion that A.M.I. instruction 501 on "proximate cause" given by the trial court as appellee's instruction No. 9, thoroughly covered appellee's ulna nerve injury under the evidence in this case.

For error in giving appellee's instruction No. 4, the action of the trial is hereby affirmed.

Affirmed.