SECURITY INSURANCE COMPANY of HARTFORD
v. William Maurice OWEN and Maurice OWEN

73-101                                    501 S.W. 2d 229

Opinion delivered November 19, 1973

*Bridges, Young, Matthews & Davis,* for appellant.

*Jones, Matthews & Tolson,* for appellees.

JOHN A. FOGLEMAN, Justice. This is the second appeal of this case. In the first, *Security Insurance Company of Hartford* v. *Owen,* 252 Ark. 720, 480 S.W.2d 558 (1972), we reversed a judgment against appellant because of error in submitting to the jury the question of construction of one of the insurance policies involved. The case is a suit by William Maurice Owen and his father Maurice Owen against Security Insurance Company of Hartford, the insurer of W. H. Marks on two policies. One of them is an automobile liability policy with a limit of $50,000. The other is a Farmer's Compre-

hensive Personal Liability Policy with a limit of $25,000. The question at issue is which policy applies.

Owen, then a minor, was injured on August 7, 1965, while guiding a tractor belonging to Marks and being towed by a pickup driven by Marks. The purpose of the trip was to take the tractor and equipment to a duck hunting club in which Marks was interested. In a suit brought by Maurice Owen in behalf of himself and his son, a judgment for $34,250 was recovered. Appellant provided the defense in that suit, having acknowledged coverage under the comprehensive personal policy but denying coverage under the automobile policy. Appellant then paid the amount of its comprehensive policy limits but continued to deny liability under the automobile policy on the basis of a clause excluding employees of Marks from coverage. This suit was then brought against appellant by appellees to recover the balance of $9,250, interest, statutory penalty and attorney's fees, as a sub-rogee of Marks, pursuant to Ark. Stat. Ann. § 66-4001 (Repl. 1966). Of course, appellees asserted that the automobile policy provided coverage to Marks. Appellant has consistently maintained its position that the exclusion in that policy applied. Obviously, Marks has not paid any part of the judgment.

After the reversal of the judgment on the first appeal, a second trial, presided over by a special circuit judge because of illness of the regular judge, resulted in a jury verdict favorable to appellant. Timely motion for new trial was filed. It was heard and granted by the regular circuit judge, who had the transcript of the proceedings before him. This appeal was taken from the order granting a new trial. Appellant contends that this order constituted an abuse of the circuit judge's discretion because it was premised upon an error of law.

The grounds for the motion were allegations of error in the admission into evidence of two pretrial statements made by W. H. Marks, a witness but not a party to this action, and error in the failure of the trial judge to admonish the jury that such statements were to be considered by them only as bearing upon the credi-

bility of the witness. The new trial was granted solely upon the finding of the regular circuit judge that there was error in the admission of the statements. .

Error of law occurring at the trial and objected to by the moving party is one of the statutory grounds for a new trial. The trial court has a broad latitude of discretion in the granting of new trials. This discretion is not limited to cases where sufficiency of the evidence is the ground for the motion. See, e.g., *Heil* v. *Roe,* 253 Ark. 139, 484 S.W.2d 889; *Millers Casualty Insurance Co.* v. *Holbert,* 253 Ark. 69, 484 S.W.2d 528; *Hardin* v. *Pennington,* 240 Ark. 1000, 403 S.W.2d 71; *Thomas* v. *Arnold,* 192 Ark. 1127, 96 S.W.2d 1108. Of course, the latitude of the trial judge's discretion is much broader where the question is whether a jury verdict is supported by a preponderance of the evidence, because of the peculiar advantage of his position in evaluating all the factors bearing upon it. In determining questions as to errors of law, his position is not of the same superiority to that of the appellate court. Still, the action of the trial judge on a motion for new trial upon a statutory ground should not be reversed in the absence of manifest abuse of his discretion. *Law* v. *Collins,* 242 Ark. 83, 411 S.W.2d 877; *Blackwood* v. *Eads,* 98 Ark. 304, 135 S.W. 922. See also, *Millers Casualty Ins. Co.* v. *Holbert,* supra; *Hardin* v. *Pennington,* supra; *Thomas* v. *Arnold,* supra. The showing that this discretion was abused must be much stronger when a new trial has been granted than when it is denied. *Heil* v. *Roe,* supra; *Worth James Construction Co.* v. *Herring,* 242 Ark. 156, 412 S.W.2d 838; *Blackwood* v. *Eads,* supra.

The party who was the beneficiary of the verdict set aside by the granting of a new trial has much less basis for a claim of prejudice than does an unsuccessful movant for a new trial. In *Porter* v. *Doe,* 10 Ark. 186, the trial court, after a verdict for the defendants, granted the plaintiffs a new trial which resulted in a verdict for the plaintiffs. The defendants alleged that the new trial was improperly granted, apparently upon the basis that the verdict was not contrary to the evidence or instructions. This court said that since the verdict was

in favor of the defendants they could not complain of either the misdirections of the judge, improper evidence admitted or a like cause, adding:

> A verdict was all that they could ask, and when it was set aside they could only complain that the Circuit Court had exercised its discretion to their prejudice. The Supreme Court has already extended its revising control over the discretionary powers of the Circuit Court as far as the most liberal practice will warrant upon the subject of new trials. This is a new case and must be predicated solely upon the ground of abuse of the discretionary power of the Circuit Court. Whether this power was exercised prudently or not there was offered the defendants another opportunity for presenting their defense, and if they had injustice done them in that trial, this court is open to hear their complaint.

In *Heil* v. *Roe,* we said:

> In Blackwood v. Eads, 98 Ark. 304, 135 S.W. 922, we pointed out that this court will much more reluctantly reverse the final judgment in a cause for error in granting than for error in refusing a new trial. Such reluctance is based on sound and practical reasoning. In the first place any competent judge is simply not as likely to find and admit error where none exists as he is to overlook or fail to recognize or accept error where it does exist. In the second place, final justice may be totally denied by the wrongful refusal of a new trial whereas final justice should be only postponed by the wrongful granting of a new trial.

Manifest abuse of discretion in granting a new trial means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Blackwood* v. *Eads,* supra. Under the circumstances prevailing here we are unable to say that the circuit judge exercised his discretion improvidently, thoughtlessly or without due consideration.

Marks testified in the first trial of this case. He was subpoenaed and called to testify at the second trial by

appellant. The issue in the case was whether young Owen was an employee of Marks. Appellees' cause of action, when the judgment against Marks remained unsatisfied for 30 days, was by statutory subrogation to the right of Marks under the policy. Ark. Stat. Ann. § 66-4001. Obviously, the interest of Marks in a favorable result in this litigation was identical to that of the Owens. Even though Marks was not a party to the action, or, strictly speaking, in privity with either of the Owens, a judgment unfavorable to the Owens would likely be binding upon Marks in any action he might bring against appellant, particularly when he could have asked to be made a party and his knowledge of the pendency of the action arose from his having been called as a witness on the critical issue. See *Carrigan* v. *Carrigan,* 218 Ark. 398, 236 S.W. 2d 579; *Roberson* v. *Hamilton,* 240 Ark. 898, 405 S.W.2d 253; *Hill* v. *Village Creek Drainage District,* 215 Ark. 1, 219 S.W.2d 635; *Moreland* v. *Meade,* 162 Md. 95, 159 A. 101 (1932); *Bacon* v. *Gardner,* 38 Wash. 2d 299, 229 P.2d 523 (1951); *Talbot* v. *Quaker State Oil Refining Co.,* 104 F.2d 967 (3rd Cir. 1939); *Terry and Wright of Kentucky* v. *Crick,* 418 S.W.2d 217 (Ky. 1967); 50 C.J.S. 322, Judgments, § 786. By the same token, a judgment against appellant would certainly relieve Marks from the payment of the judgment against him.

In this situation, the testimony of Marks and young Owen was critical because they appear to be the only ones who can actually shed any light on the existence of an employer-employee relationship. Appellant had promptly made inquiries of both soon after the wreck occurred. Young Owen testified Marks said nothing about paying him for steering the tractor, that he had not done any other work for Marks or been to the duck camp during the year in which he was injured, that he had never been paid any money by Marks, and that Marks had never offered to make any payment to him. On cross-examination, he admitted making a statement to George Sims, an insurance adjuster, that he was working for Marks at the time of his injury and that Marks was going to pay him. The statement was introduced. It contained a clause stating, in effect, that Owen was an occasional employee and that Marks paid him $7.00 per day for eight hours' work. Owen explained the statement by saying he did

not tell the adjuster the things contained in it. He said that, at the time, he had been "doped up" for his fourth surgical procedure due to his injury and that Sims read the content of the statement, and, after each sentence, asked him if he agreed. Owen attributed his affirmative answers and his signing the statement to the influence of drugs. He admitted that all of the statement except those parts pertaining to the employment relationship was essentially correct. Appellees' case on the issue rested on this testimony.

Marks had also signed statements pertaining to the employment status of young Owen. One of them was dated August 11, 1965, and the other December 20, 1967. Marks testified, when called by appellant, in the second trial, that his regular employee who was scheduled to drive the tractor did not show up on the morning the tractor was to be taken to the duck club and that young Owen took his place. He stated he would have paid the regular employee and doubtless would have paid young Owen, because he had paid others who had cleaned up a levee with a chain saw. He could not recall whether he had paid Owen anything, but his regular rate of pay for the type of work done was $7.00 per day. He then stated he intended to pay Owen had it not been for the wreck, but probably would not have paid him at the rate of $7.00 per day.

After Marks had given this testimony, he stated he could not recall what he might have told appellant's counsel earlier, but admitted he had previously given a statement to the insurance adjuster, George Sims. Both statements were then offered and admitted into evidence over appellees' objection. These objections included the following: the statement was hearsay and was taken without opportunity for cross-examination, and that the testimony of a witness cannot be bolstered by showing his out-of-court statements. The statement was offered by appellant for impeachment without any suggestion that it might have probative value as substantive evidence. No limiting or cautionary instruction was requested or given.[1] Marks

---

[1]The failure to give such instruction is not reversible error in the absence of a request. *Perry v. State*, 255 Ark. 378, 500 S.W. 2d 387. Where the testimony is admitted for impeachment purposes only, it seems that the better practice would be to give a limiting instruction.

admitted, during his testimony, that at the time of signing the statements he had no idea that the employment status of young Owen had any bearing on the extent of his insurance coverage and that he showed the insurance policies to the elder Owen and the attorney for the Owens at a later date. The first statement contained the following sentence: "Owen works for me by the day and I pay him $7.00 per day for average days." After the statement was introduced, Marks admitted having told the adjuster this. The second statement was to the effect that Owen had worked for Marks on occasion, usually cleaning up, cutting weeds, working on the club house, and had been paid from Marks' pocket, but that Marks did not think that the youth's name had ever appeared on his payroll.

It was shown on cross-examination of Marks that, during the first trial, he had testified he did not pay young Owen anything, had never paid him anything, he did not think he ever discussed paying him anything and had never paid Owen anything out of his pocket. On redirect examination it was shown that he had also stated, at the first trial, that it was possible he had paid young Owen something out of his pocket and that he had admitted telling the insurance adjuster on August 11, 1965, that Owen worked for him part-time and that he paid Owen $7.00 per day.

Appellant now argues that the statements were admissible, under the peculiar circumstances existing here, and particularly that the identity of interest of Marks and the Owens made the statements admissible, so that, in any event, there could be no error in admitting them, relying upon *Sherman* v. *Mountaire Poultry Co.*, 243 Ark. 301, 419 S.W. 2d 619; *Smith* v. *Clark*, 219 Ark. 751, 244 S.W. 2d 776; *Home Insurance Co.* v. *Allied Telephone Co.*, 246 Ark. 1095, 442 S.W. 2d 211, among other authorities. There is no indication that this latter argument, which is presented rather forcefully and persuasively here, has ever been presented to the trial court. If we agreed with appellant and our agreement resulted in affirmance of the trial court, this fact would be immaterial. *Lisko* v. *Uhren*, 130 Ark. 111, 196 S.W. 816, 88 C.J.S. 189, Trial, § 82. But we cannot say this matter is unimportant under these conditions. Appellees had no opportunity to object to the statements as substantive evidence or to take counter measures.

Both statements by Marks were in evidence in the first trial, and Marks' testimony as outlined in our opinion on the first appeal does not materially differ from that given at the second trial. However, the recollection of the witness may have been hazier on this occasion. Similar objections to the introduction of the statements were then made by appellees but withdrawn.

Appellant's argument that the statements were admissible for impeachment purposes would be compelling had Marks not been used as a witness by appellant in an effort to prove the critical issue. It does not appear that appellant claimed to have been surprised by the testimony elicited, and appellant does not argue that it was entrapped into using Marks as a witness. The requirement of surprise before a party may impeach a witness called by him has been criticized. See IIIA Wigmore on Evidence, Chadbourne Revision, 981, § 905 n 6; Diffey, Impeaching One's Own Witness in Arkansas, 8 Law School Bul. 34, 36. This criticism would not justify a change in our construction of the statute, but the statute has not been so applied in the circumstances which prevailed here. We are not necessarily bound to extend the requirement of surprise as a condition precedent to the situation that existed when Marks testified, or to that which may prevail when, and if, he testifies again. A recognized exception to the rule against impeachment of one's own witness exists when it appears that the witness is hostile. See 58 Am. Jur. 444, Witnesses, § 799; Annot. 21 L.R.A. 418, 423 (1893). The determination whether a witness is hostile lies within the sound judicial discretion of the trial judge, in the exercise of which he should be accorded great latitude and may consider, among other things, such matters as the extent of the deviation of the testimony from previous statements by the witness, and inferences that the witness is attempting to suppress the truth, drawn from his testimony and conduct. *Lerma* v. *United States,* 387 F. 2d 187 (8th Cir. 1968), cert. denied, 391 U.S. 907, 88 S. Ct. 1658, 20 L. Ed. 2d 421; *State* v. *Hutnik,* 39 Wis. 2d 754, 159 N.W. 2d 733 (1968); *State* v. *Davis,* 400 S.W. 2d 141 (Mo. 1966), cert. denied, 385 U.S. 872, 87 S. Ct. 142, 17 L. Ed. 2d 99; *Fox* v. *Schaeffer,* 131 Conn. 439, 41 A. 2d 46, 157 A.L.R. 132 (1944).

The question of admissibility of the evidence is

certainly not free from doubt, and much lies in the discretion of the trial judge. If we could say with assurance that the statements were admissible in the trial, either for impeachment of appellant's own witness or as substantive evidence, we might be able to say that there was an abuse of the trial court's discretion in granting a new trial. Marks' interest in the case may have been such as to render him a hostile or adverse witness, in which case he might properly be impeached by the party calling him. It is certain that after young Owen testified as he did, appellant had little choice in the matter of calling Marks as a witness. Even for impeachment purposes, there are elements other than hostility of the witness calling for the exercise of judicial discretion in determining admissibility. Among these is the matter of prejudice of his statements to the party calling him.

Since the propriety of admitting the evidence is doubtful, the doubt should be resolved in favor of the granting of a new trial. 58 Am. Jur. 327, New Trial, § 121; *Marks v. Haas,* 166 Iowa 340, 147 N.W. 740, Ann. Cas. 1917D 543 (1914); *Steensland v. Iowa-Illinois Gas & Electric Co.,* 242 Iowa 534, 47 N.W. 2d 162 (1951). We see little difference in a case such as this and the cases where we sustained the granting of a new trial because the trial judge did not feel that his instructions to the jury had properly presented the issues to the jury. No sound reason exists for a different rule or procedure where admissibility of evidence, rather than jury instructions, is concerned, and the error is not manifest.

Ordinarily we would undertake to resolve the questions posed which are likely to arise upon a new trial, but cannot do so in this case. The statements of Marks are not wholly consistent and his recollection will not likely improve with time, so there is no way to anticipate exactly what his testimony might be in another trial. Nor can we predict whether the statements will be offered in evidence, the time or state of the record when they may be offered, the circumstances or conditions which will prevail when they are offered, or the purpose for which the statements may be offered. Consequently, we are unable to satisfactorily answer the questions which might arise. Since these matters are subject to so much speculation, we are not called upon to resolve questions

536

of admissibility which may arise on a new trial.

We do not consider that the regular judge's discretion to grant a new trial was limited in this case by the fact that he did not preside at the trial, particularly in view of the fact that in considering the motion he had the transcript of the trial before him. We find no merit in appellant's argument that the mere showing, on cross-examination, that Marks had given testimony at the first trial different from his pretrial statements and perhaps different from his testimony on direct examination by appellant constituted a waiver of the evidentiary question.

Since we find no abuse of discretion, we affirm the judgment.

BYRD, J., dissents.