MADDOX, Justice.[1]
The primary issue presented on these appeals is whether a successor judge, who is the successor judge by reason of his defeating the predecessor judge in an election, should have granted a motion for a new trial where all of the evidence had been presented ore tenus to the predecessor judge and the predecessor judge had made findings of fact.
The subject matter of the underlying action was damage caused by a landslide that occurred while a shopping center was being built on an undeveloped piece of property located in the Eastwood section of Birmingham. The landslide caused substantial damage to adjacent property and also increased substantially the cost of developing the site.
Many of the basic facts are not disputed. Plaintiff Halstead Developers, Inc. (“Hal-stead”), an Alabama corporation with its principal place of business in Montgomery, operated a real estate development business. Eastwood Festival Associates (“EFA”) was an Alabama general partnership formed by Halstead officers James Tatum, James Cofer, Jim Miller, Nicholas Robbins, and William Fuller, solely for the purposes of acquiring options to, and developing, a tract of commercial real estate located on the side of a mountain in the Eastwood area of Birmingham; that tract is now known as the Eastwood Festival Center. Halstead never owned the site, but had acquired options to purchase the property in 1985, which, with renewals, were scheduled to expire in August 1987.
During the period from 1985 to 1987, Halstead, or EFA, owned the options to purchase the site. In an effort to determine the economic feasibility of developing a strip shopping center on the site, they gathered information from a variety of sources, including professional architects, contractors, and engineers. From the outset, it was apparent that development of the site would require deep cuts into the side of a mountain and the construction of deep fill.
In March 1987, Halstead began meeting with representatives of a real estate development corporation in an attempt to negotiate a joint venture, but these negotiations did not lead to an agreement, and two weeks before Halstead’s options to purchase the property expired, the development corporation withdrew from joint venture negotiations and made an offer to Halstead to purchase the entire project.
Halstead and EFA later sold all of their rights to Richard Beard. These rights included the options to purchase the site, the leases then in existence, and all other reports, documents, and information concerning the project. It was known that Beard would assign the rights he acquired individually to Birmingham Retail Center Associates, Ltd. (BRCA), an Alabama limited partnership to be formed by Beard, William R. Cooper, and others for the purpose of developing the Eastwood Festival Center. It appears to have been understood that at the time of the execution of the sale and purchase agreement, Beard or the limited partnership would enter into separate agreements (1) for Halstead to serve as construction manager for development of the project and (2) for C.F.H. Investments, Inc., an Alabama corporation wholly owned by Halstead, to act as leasing agent for the project.
As part payment of the purchase price, Beard executed a promissory note in favor of EFA, which contained certain conditions precedent. BRCA claims that two of these conditions precedent had not been fully satisfied when this action was commenced.
*342 ■ The sale and purchase agreement between Halstead and EFA and Beard contained the following provision regarding the furnishing of adverse information, which BRCA claims was breached by Hal-stead.
“3.03 Adverse Information:
“Sellers have acquired the Options, rezoned the Property, conceived all of the Development Plans, and are generally knowledgeable about the various aspects of the proposed Shopping Center. Sellers have no information or knowledge of any applicable laws, ordinances, or restrictions or change contemplated in any applicable laws, ordinances or restrictions, or any judicial or administrative action pending or threatened, or any action by adjacent landowners, or natural or artificial conditions upon the Property, which would prevent, limit, impede, or render materially more costly the development of the Proposed Shopping Center.”
The initial action was filed by the Hal-stead plaintiffs, who sued Beard and BRCA, alleging fraud in the inducement to contract, breach of the sale and purchase agreement, breach of the promissory note, breach of the leasing agreement, and breach of the construction management agreement. BRCA timely answered the complaint, and filed a counterclaim against all of the plaintiffs, alleging fraud in the inducement to contract, concealment of material facts, negligent performance of the construction management agreement, breach of the construction management agreement, and breach of the leasing agreement.
The predecessor trial judge conducted a lengthy bench trial, during which many exhibits were admitted into evidence. He ultimately entered a judgment in favor of BRCA in the amount of $6,600,000.
Halstead filed a motion for new trial with the successor trial judge, setting forth almost 200 grounds of alleged error.[2] The successor trial judge heard oral arguments and later granted Halstead a new trial. BRCA appealed.
The first question we must answer in this case is: What is our standard of review? BRCA contends that “[t]he presumption of correctness on appeal attaches to the findings of the judge who heard the evidence ore tenus, not to the successor judge's order granting a new trial.” BRCA cites to us this Court’s case of National Sec. Ins. Co. v. Elliott, 276 Ala. 353, 162 So.2d 449 (1964), in support of its argument.
In National Security, the judge heard the ore tenus evidence and found in favor of the defendant, just as was true here. That trial judge resigned, however, and the successor judge granted a new trial, just as the successor trial judge did here. In National Security, this Court stated the following:
“It is to be remembered that this case was tried by the court without a jury. In such a trial, it seems axiomatic that the decision of the court has the effect of the verdict of a jury. Beasley v. Beasley, 256 Ala. 647, 649, 57 So.2d 69.
“In the case at bar, the new trial was not granted by the judge who tried the case and heard and saw the witnesses testify. At most, the judge hearing the motion could read, or have read to him a transcription of the evidence given ore tenus on the original trial. The parties have stipulated that the testimony taken at the trial has not been transcribed or read to the judge hearing the motion. In reviewing the sufficiency of the evidence to sustain the verdict, the judge hearing the motion did not have the benefit of observing the witnesses, and there is no reason known to us why there should be any presumption that his ruling on the sufficiency of the evidence is correct. He was no better advantaged than the appellate court in reviewing the evidence. It is, therefore, our duty to review the sufficiency of the evidence to sustain the judgment for defendant without pre *343 sumption in favor of the ruling granting the new trial. On the contrary, we should indulge the presumption that the judge who heard the evidence ore tenus on the original trial decided correctly. As already stated, his decision is like the verdict of a jury.”
276 Ala. at 355, 162 So.2d at 451.
Halstead distinguishes National Security on the ground that the Court, in that case, specifically pointed out that the trial judge had not reviewed the transcript of the evidence. It is true that this Court did point out that fact in its opinion, but the principle of law stated in National Security does not seem to be based on that reason, but on the fact that a successor trial judge is in no better position than an appellate court when reviewing a trial transcript.
In addition to arguing that National Security is distinguishable, Halstead argues that the provisions of Rule 63, Ala.R.Civ.P., specifically provide that if a successor trial judge cannot perform his or her duties because he or she did not preside at the trial, or for any other reason, then the successor trial judge has the discretion to grant a new trial. Rule 63 reads as follows:
“If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.”
We agree with Halstead. As the Committee Comments to Rule 63 show, Rule 63 is identical with Rule 63, Fed.R.Civ.P., as it read before the 1991 amendment, and “federal case law interpreting a federal rule that is identical to an Alabama rule is authority for construction of the Alabama rule.” Alabama Power Co. v. Wallace, 548 So.2d 1372, 1375 (Ala.1989). Applying this principle of law, we hold that the words “or other disability” are broad enough to cover the facts of this case where the predecessor judge was defeated in an election shortly after having made his ruling. Emerson Electric Co. v. General Electric Co., 846 F.2d 1324, 1326 (11th Cir.1988). See, also, 7 Moore’s Federal Practice, 1163.03, pp. 63-3 through 63-4 (1972):
“The disability contemplated by Rule 63 includes more than mere mental or physical disability. In cases decided under former 28 USC § 776 it was said that ‘disability’ as used in the statute was not limited to physical or mental disability arising from death, sickness, insanity or the like, but meant ‘incapacity to do a legal act.’ Accordingly, it was held that a trial judge’s resignation rendered him incapable of setting and signing a bill of exceptions and constituted a ‘disability’ within the meaning of the former statute....”
Even though this Court has not specifically considered the provisions of Rule 63 in reviewing actions by successor judges that overturn actions taken by their predecessors, this Court has adopted, at least inferentially, the rule that we announce today. We cite two Alabama cases that address the discretion of a successor judge. In Trail Pontiac-GMC Truck, Inc. v. Evans, 540 So.2d 645 (Ala.1988), Judge Douglas Johnstone overruled a judgment entered by Judge Robert Hodnette, Jr. On appeal, this Court returned the case to Judge Johnstone with instructions for him to consider the record or transcript of the first trial before making a substantive decision on whether to set aside the directed verdict; that ruling indicates that this Court concluded that the successor judge could review the transcript of the evidence and make a substantive decision to set aside a prior judge’s order.
Likewise, the Civil Court of Appeals in Hall v. Hall, 445 So.2d 304 (Ala.Civ.App. 1984), without citing Rule 63, Ala.R.Civ.P., indicated that a successor judge has discre *344 tion in ruling on post-judgment motions, and that a successor judge’s discretion would be set aside by an appellate court only when it was shown to be plainly and palpably wrong.
The court in Security Ins. Co. of Hartford v. Owen, 255 Ark. 526, 501 S.W.2d 229, 285 (1973), stated:
“We do not consider that the regular judge’s discretion to grant a new trial was limited in this case by the fact that he did not preside at the trial, particularly in view of the fact that in considering the motion he had the transcript of the trial before him.”
Applying this rule, we conclude that BRCA has not sustained its burden of showing that the successor judge here abused his discretion in ordering a new trial. Therefore, we affirm his order.
Even though we affirm the order of the trial judge granting a new trial, we should not be understood as holding that the findings of fact made by the predecessor judge are not supported by the evidence. Our decision is based solely upon the provisions of Rule 63, which states that “if [the successor] judge is satisfied that he cannot perform [his] duties because he did not preside at the trial or for any other reason,” he may grant a new trial.
This was a complicated case, involving claims and counterclaims and a third-party complaint. In the briefs on this appeal, there are charges and countercharges about the reasons certain actions were taken and about the effect of the evidence that was presented. There is also a strong argument made that there are specific legal grounds in the motion for new trial that would support the trial judge’s order. Although we find it unnecessary to address any of these, we do note that some of the grounds of alleged error seem to be meritorious.
Based on the foregoing, we affirm the order of the trial court.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.

. Justice Maddox did not hear the oral arguments, but has listened to the tapes of the arguments.

. After the entry of judgment, but before the new trial motion was acted on, the successor judge had defeated the predecessor judge in a general election and the successor judge had taken office.