2012 Ark. 202

**The ENTERTAINER, INC.,
and Charles E. Wells,
Appellants**

v.

**Cory DUFFY, Appellee.**

No. 11–766.

Supreme Court of Arkansas.

May 10, 2012.

James W. Harris, Hoskins & Harris, P.A., Blytheville, for Appellants.

Tony L. Wilcox, Wilcox, Parker, Hurst & Lacy, Chris A. Averitt, Jay Scholtens, Scholtens & Averitt, PLC, Jonesboro, for Appellee.

KAREN R. BAKER, Justice.

Appellants, The Entertainer, Inc., and Charles E. Wells (sometimes referred to collectively as "appellants"), appeal from orders of the Mississippi County Circuit Court in a personal-injury action filed against them by appellee Cory Duffy. On appeal, appellants assert that they are entitled to a new trial because their attorney abandoned them and failed to comply with Rule 64, that The Entertainer should not be responsible for the $10,000 attorney-fee award, that The Entertainer is immune from suit and thus the circuit court lacked subject-matter jurisdiction, and that there is not a basis for an award of punitive damages to Duffy. The Arkansas Court of Appeals certified this case to us, stating that the issues presented concern the power of this court to regulate the practice of law. Accordingly, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(5) and (d) (2011). We affirm.

On November 30, 2009, appellee filed a complaint alleging that on February 28, 2009, he was shot twice while standing outside The Entertainer waiting for a taxi. Appellee named as defendants The Entertainer, an Arkansas corporation with its primary place of business in Mississippi County, and Wells, the alcohol-permit holder. The complaint averred that there had been numerous shooting incidents at The Entertainer, that The Entertainer's alcohol permit had been suspended, and that it had been fined due to shootings, stabbings, and fights. Further, appellee alleged that appellants were aware that intoxicated, unruly, and violent patrons had caused damage to other innocent patrons, such as himself, and failed to have adequate policies and procedures and security on hand to protect the patrons. Appellee asserted claims for breach of high duty of care, negligence, negligent hiring, negligent retention, and negligent supervision and training. In addition, appellee sought punitive damages claiming appellants' actions were willful and wanton, and committed with a reckless disregard of the consequences.

On December 19, 2009, appellee served Wells with the complaint, summons, and written discovery, and after Wells failed to respond, appellee filed a motion for default judgment. The circuit court entered an order granting the motion on February 1, 2010. Later, on that same day, attorney J.L. Wilson filed an answer on behalf of appellants, although The Entertainer had not yet been formally served with the complaint or summons. In pleadings filed on his behalf by Wilson, Wells acknowledged that a default judgment had been entered against him; however, Wilson never filed a motion to set aside the default judgment.

The Entertainer was served by warning order with a complaint and summons, and in August 2010, appellee served written

discovery requests upon Wilson. Wilson failed to respond to the discovery, and appellee filed a motion to compel on September 23, 2010. Wilson did not respond to the motion, and on November 8, 2010, the circuit court ordered a response within ten days. Wilson did not respond, and on December 9, 2010, appellee filed a motion for sanctions. Again, Wilson did not respond.

In January 2011, the circuit court sanctioned The Entertainer by striking its answer and entered a default judgment against it. The order was served on Wilson; however, he never filed a motion to set aside the sanction or the default judgment. The circuit court set a hearing for April 1, 2011, for the sole purpose of determining damages. Appellee and the circuit court furnished notice of the hearing to Wilson, but neither Wilson nor his clients attended the hearing. The hearing was held on April 1, 2011, and on that same date, the circuit court entered an order awarding appellee $520,000 in compensatory damages and $1,560,000 in punitive damages, plus costs.

Ten days after entry of the judgment, a new law firm entered an appearance on behalf of appellants, filing a motion for a new trial and asserting that irregularities in the proceedings affected appellants' substantial rights. Specifically, appellants stated that they failed to appear for the hearing because Wilson abandoned them and failed to inform them of the hearing. Appellants also argued that it was improper to award punitive damages in a negligence case, that The Entertainer was a nonprofit entity and immune from any tort liability, and that The Entertainer should never have been made a party pursuant to Arkansas Code Annotated section 23–79–210.

On April 19, 2011, The Entertainer filed an objection to the $10,000 attorney-fee award granted by the oral ruling of the circuit court at the hearing. On April 28, 2011, the circuit court entered an order awarding appellee attorney's fees in the amount of $10,000 to be paid by The Entertainer. The circuit court did not act on the motion for a new trial and it was deemed denied on May 11, 2011. Appellants filed a notice of appeal on May 16, 2011.

Appellants first argue that they are entitled to a new trial pursuant to Arkansas Rule of Civil Procedure 59 because their attorney abandoned them and failed to comply with Arkansas Rule of Civil Procedure 64. Arkansas Rule of Civil Procedure 59 permits a trial court to grant a new trial upon showing that the substantial rights of the aggrieved party have been materially affected due to one of the enumerated grounds. Ark. R. Civ. P. 59(a) (2011). The trial court has a broad latitude of discretion in the granting of new trials. *Security Ins. Co. of Hartford v. Owen*, 255 Ark. 526, 501 S.W.2d 229 (1973). This discretion is not limited to cases where sufficiency of the evidence is the ground for the motion. *Id.* In determining questions as to errors of law, the trial court will not be reversed in the absence of a manifest abuse of discretion. *Id.* Manifest abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.*

Appellee argues that appellants are not entitled to relief as they were not diligent in protecting their interests citing *Diebold v. Myers General Agency, Inc.*, 292 Ark. 456, 731 S.W.2d 183 (1987). There, Diebold defaulted on a note to repay money her son had stolen, and upon being sued, she contacted her son who hired an attorney. Diebold had nothing more to do with the case. The attorney was permitted to withdraw on the day of trial and judgment

was entered against Diebold. Because she had not taken one single step to protect her interests other than contacting her son, a person she knew was irresponsible, Diebold could not prevail on a claim for relief under Rules 60 and 64.

Appellants cite to *Jones–Blair Co. v. Hammett,* 326 Ark. 74, 930 S.W.2d 335 (1996), for the proposition that a new trial is warranted under Rule 59 when counsel fails to withdraw in conformity with Rule 64. Arkansas Rule of Civil Procedure 64(b) provides that "[a] lawyer may not withdraw from any proceeding or from representation of any party to a proceeding without permission of the court in which the proceeding is pending." Ark. R. Civ. P. 64(b) (2011). In *Jones–Blair,* the attorney withdrew as counsel on the day of trial without notifying the client. We reversed the trial court's refusal to set the judgment aside under then Rule 60(c) because the attorney did not follow the requirements set forth in Rule 64. We noted that the focus of the trial court in permitting withdrawal under Rule 64 should be aimed at protecting the client's interests, requiring the trial court to play an active role. We distinguished *Diebold* on the basis that in that case the appellant had made no efforts to communicate with her attorney.

Here, the record shows that Wilson failed repeatedly to respond on behalf of his clients at critical times resulting in serious legal consequences for appellants. Appellants argue that this failure to respond on their behalf makes their situation more egregious than that in *Jones–Blair,* and thus, more deserving of a new trial. However, appellants' argument fails to recognize the pivotal distinctions between *Jones–Blair* and their case. In *Jones–Blair* after an attorney was hired, Jones–Blair kept in contact with him, and had a reasonable basis for believing that the trial

had been cancelled. Jones–Blair learned of the judgment entered against them only when notified by the opposing counsel, then promptly petitioned to set aside the judgment and requested a hearing. At the hearing Jones–Blair presented evidence showing communications with their attorney and establishing that an irregularity in the proceedings precluded them from receiving a fair trial and entitling them to relief under Rule 59(a)(1).

Here, the record is devoid of evidence regarding appellants' contact with Wilson. Appellants never moved to set aside the default judgment and presented no evidence from which the circuit court could have determined that they, like Jones–Blair, kept in contact with their attorney or kept abreast of what was occurring in the proceedings. Instead, as in *Diebold,* appellant's claim for a new trial is based solely on deficiencies in counsel's conduct. A client is generally bound by the acts of his counsel and cannot avoid the consequences of his attorney's neglect or omissions. *See, e.g., Florence v. Taylor,* 325 Ark. 445, 928 S.W.2d 330 (1996). Because of appellants' failure to present evidence that they kept in contact with Wilson or attempted to keep abreast of the proceedings, we find no abuse of discretion in the denial of their motion for a new trial.

Next, The Entertainer argues that it should not be responsible for the $10,000 attorney's-fee award as it was "Wilson who thumbed his nose at the [appellee] and the court, not appellants." The Entertainer also contends that the award is not supported by the record and the circuit court gave no explanation as to how it was calculated.

Where the order granting or denying attorney's fees is entered after entry of the judgment, the issue of attorney's fees is a collateral matter. *Craig v. Carri-*

*go,* 353 Ark. 761, [7]121 S.W.3d 154 (2003). As such, the challenging party must file a notice of appeal from the fee order, and in the absence of such an appeal, this court will not address any argument on the fee issue. *Mason v. Jackson,* 323 Ark. 252, 914 S.W.2d 728 (1996). Moreover, a notice of appeal shall designate the judgment, decree, order, or part thereof from which the case is appealed. Ark. R.App. P.-Civil 3(e)(ii) (2011). Orders not mentioned in a notice of appeal are not properly before the appellate court. *Lindsey v. Green,* 2010 Ark. 118, 369 S.W.3d 1.

▮ Here, the judgment was entered on April 1, 2011, and the order granting attorney's fees was entered on April 28, 2011. Appellants filed a notice of appeal on May 16, 2011. In their notice of appeal, appellants stated that they were appealing from the April 1, 2011 judgment including all prior rulings that were incorporated in or formed the basis for that judgment and from the denial of their motion for a new trial. Appellants failed to appeal from the order granting attorney's fees either by a separate notice of appeal or by designating it in the notice of appeal that they filed. Accordingly, review of the issue regarding attorney's fees is not properly before this court.

The Entertainer also argues that because it is entitled to charitable and statutory immunity from suit, the circuit court lacked subject-matter jurisdiction, and thus the orders and judgment entered against it are void. Appellee asserts that because The Entertainer did not move to set aside the default judgment, it cannot assert defenses to liability when the issue on appeal is limited to the circuit court's refusal to grant it a new trial on the issue of damages.

▮ [8]A default judgment establishes liability. *See, e.g., Tharp v. Smith,* 326 Ark. 260, 930 S.W.2d 350 (1996). A de-faulting defendant may not introduce evidence to defeat the plaintiff's cause of action. *Polselli v. Aulgur,* 328 Ark. 111, 942 S.W.2d 832 (1997); Howard W. Brill, *Arkansas Law of Damages* § 5–1 (4th ed.2002). A defaulting defendant however can challenge the judgment based on the trial court's lack of subject-matter jurisdiction. *Hervey v. Farms, Inc.,* 252 Ark. 881, 481 S.W.2d 348 (1972).

The Entertainer cites *Low v. Insurance Company of North America,* 364 Ark. 427, 220 S.W.3d 670 (2005), for the proposition that the circuit court never had subject-matter jurisdiction over it. In *Low,* this court held that a charitable organization was immune from suit and that the proper party defendant in a claim against a charitable entity is the entity's liability insurer. The Entertainer further cites to the dissent in *Vent v. Johnson,* 2009 Ark. 92, 303 S.W.3d 46, requesting that we adopt the reasoning that immunity afforded by Arkansas Code Annotated section 21–9–301 deprives the trial court of subject-matter jurisdiction.

Assuming, without deciding, that The Entertainer can properly raise charitable immunity, we find no merit to this argument. Arkansas Rule of Civil Procedure 8(c) specifically lists certain affirmative defenses that a party must plead in responding to a complaint, counterclaim, cross-claim, or third-party claim. Ark. R. Civ. P. 8(c) (2011). Rule 8(c) further provides that any other matter not specifically listed that constitutes an affirmative defense must be pled. *Id.* In *Felton v. Rebsamen Medical Center, Inc.,* 373 Ark. 472, 284 S.W.3d 486 (2008), we held "that charitable immunity is an affirmative defense, falling into the catch-all provision." *Id.* at 480, 284 S.W.3d at 492.

▮ 65 [9]The burden of proving an affirmative defense is on the party assert-

ing it. *See, e.g., Rodgers v. CWR Constr., Inc.*, 343 Ark. 126, 33 S.W.3d 506 (2000). It must be specifically pled and proven in order to be considered by the circuit court. *Felton, supra.* Charitable immunity does not deprive the circuit court of subject-matter jurisdiction. *Felton, supra.* Because charitable immunity is an affirmative defense and not jurisdictional, and The Entertainer has not shown that the circuit court lacked subject-matter jurisdiction in entering the default judgment against it, we find no basis to reverse.

Finally, appellants contend that there was no basis in the law for the award of punitive damages because this is not the kind of case where punitive damages can be awarded. Specifically, they assert that because they did not shoot appellee, their conduct amounts to negligence, and negligence cannot support an award of punitive damages. Appellee asserts that appellants can not challenge the award of damages as they did not attend the hearing, and in the alternative, that there was sufficient evidence presented to support the award by the circuit court.

■■■■ In Arkansas, a default judgment establishes liability but not the extent of damages. *Volunteer Transp., Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004). A hearing is required to establish damages, and the plaintiff must introduce evidence to support damages. *Byrd v. Dark*, 322 Ark. 640, 911 S.W.2d 572 (1995). This is so even in the absence of the defaulting party. *See McGraw v. Jones*, 367 Ark. 138, 238 S.W.3d 15 (2006) (defaulting party who did not attend hearing on damages not precluded from contesting the amount of damages on appeal). Thus, appellants' failure to appear at the damage hearing does not procedurally bar them from challenging the award of damages to appellee.

Appellants rely on *J.B. Hunt Transport, Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995), for the proposition that negligence, however gross, will not support an award of punitive damages. *Doss*, however, is not dispositive of appellants' argument on appeal. The crux of appellants' argument is that because they did not directly cause appellee's injury, their conduct can not rise above the level of negligence, precluding the award of punitive damages. However, a defaulting party is precluded from defending on the issue of liability, which would include proximate causation. *Jones v. McGraw*, 374 Ark. 483, 288 S.W.3d 623 (2008).

■■■■ Appellee's complaint seeking punitive damages asserted that appellants intentionally undertook to cause harm with reckless indifference and disregard for the consequences from which malice may be inferred, and engaged in conduct that was willful and wanton. Specifically, Appellee alleged that in the thirty-six-month period prior to the filing of the complaint, there had been thirteen shooting incidents at The Entertainer, which were reported to law enforcement, and numerous other unreported incidents. Appellee further alleged that The Entertainer and Wells had knowledge of innocent third parties being injured by intoxicated, unruly, or violent patrons but that The Entertainer and its management continued to sell alcoholic beverages to intoxicated patrons and The Entertainer failed to take reasonable steps to protect its patrons. These allegations in the complaint were deemed admitted when the circuit court struck appellants' answer and, therefore, appellee was allowed to present proof to establish entitlement to punitive damages at the damages hearing. *See McCoy v. Montgomery*, 370 Ark. 333, 259 S.W.3d 430 (2007) (An award of punitive damages is justified where the evidence indicates that the defendant

acted recklessly or wantonly in causing the injury or with such conscious indifference to the consequences that malice may be inferred.).

 When the trial judge, rather than a jury, sits as a trier of fact in a civil case, our appellate standard of review is not whether there is any substantial evidence to support the finding of the court, but whether the judge's findings are clearly erroneous or clearly against the preponderance of the evidence. *McGraw, supra.* At the hearing, appellee testified that he was shot twice in the stomach requiring hospital stays of seventeen days. He testified that he had severe complications and presented evidence of medical charges of $154,138.59. He also presented evidence that city and county law enforcement frequently responded to violent fights, shootings, and stabbings at The Entertainer. In the seventeen months before appellee was shot, the Arkansas Alcoholic Beverage Control Board (Board) imposed fines and suspended appellants' private club and beer permits due to multiple shootings, a fight, and a stabbing at The Entertainer. The Board's order reflected that because The Entertainer was already on probation pursuant to a December 2006 order, the newly-imposed one year probation could not begin for four months. Based upon the foregoing evidence, we cannot say that the circuit court's award of $1,560,000 in punitive damages was clearly erroneous.

Affirmed.