SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–220

| | |
|---|---|
| MCSA, LLC, D/B/A MEDICAL CENTER OF SOUTH ARKANSAS<br>APPELLANT | **Opinion Delivered** October 8, 2014 |
| V. | APPEAL FROM THE UNION COUNTY CIRCUIT COURT<br>[NO. CV-2013-0072-6] |
| ELLA THURMON AND MICKEY THURMON<br>APPELLEES | HONORABLE DAVID F. GUTHRIE, JUDGE |
| | REVERSED AND REMANDED |

## RITA W. GRUBER, Judge

MCSA, LLC, d/b/a Medical Center of South Arkansas (the hospital) appeals a damages award in a default judgment, challenging the sufficiency of the evidence.[1] We reverse and remand for a new hearing on the amount of damages.

On March 7, 2013, Mickey and Ella Thurmon filed a complaint alleging that Ella sustained injuries at the hospital on June 28, 2011, when she stepped on a slippery substance on a tile floor near where a janitor was working. The Thurmons alleged that the hospital's negligence in causing the substance to be placed on the floor and in failing to warn that the floor was slippery caused Ella to sustain damages—some of which were permanent in nature. Ella claimed that she sustained serious bodily injuries, incurred substantial past medical bills,

---

[1]MCSA, LLC, d/b/a Medical Center of South Arkansas, is identified in the pleadings as a for-profit corporation doing business as Medical Center of South Arkansas.

and would continue to incur future medical bills; she asked for damages for past and future pain, suffering, and mental anguish. Mickey, her husband, claimed that the hospital's negligence caused him to lose the companionship and services of his wife.

On May 5, 2013, the Thurmons moved for a default judgment and requested a damages hearing, noting that service had been perfected on the hospital's registered agent, that the hospital had not filed an answer or otherwise appeared, and that the time for doing so had passed. At the October 22, 2013 hearing on damages, the Thurmons' proof consisted of their own testimony, medical exhibits, and related travel expenses. The hospital was not notified of the hearing and did not appear. On November 5, 2013, the circuit court awarded a default judgment to the Thurmons, finding that they were entitled to judgment as a matter of law because the hospital failed to timely respond and awarding damages in the amount of $645,055.98.

On November 20, 2013, the Thurmons contacted the hospital regarding their intent to execute on the judgment. The hospital answered the complaint on November 22, 2013, denying its allegations and affirmatively asserting contributory negligence, assumption of the risk, "obvious danger rule," comparative fault, and other affirmative defenses.

Also on November 22, 2013, the hospital filed a motion to set aside the judgment, contending that the damages amount should be set aside because the Thurmons failed to notify the hospital of the damages hearing and that the evidence did not support the award granted. The hospital requested that the case be decided on its merits; alternatively, it requested that the award be set aside on the basis that it was clearly erroneous and that another

damages hearing be conducted with the hospital's participation. The motion cited Ark. R. Civ. P. 55, which states:

> The court may, upon motion, set aside a default judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud, misrepresentation, or other misconduct on the adverse party; or (4) any other reason justifying relief from the operation of the judgment. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action; however, if the judgment is void, no other defense to the action need be shown.

On December 4, the circuit court conducted a hearing on the motion to set aside the default judgment. The hospital argued in part that the award—roughly twenty times the $30,809.98 in medical expenses—was unreasonable; that the only witnesses were the Thurmons; that their counsel suggested numbers to them and the court merely tallied them; that there were no experts or proof that each expense "was related to the damage total"; and that the medical records did not support the damages award. At the conclusion of the hearing, the court denied the motion to strike default liability but took under advisement the issue of setting aside the default-damages award.

On December 14, 2013, the court granted the hospital an extension to file its notice of appeal. On December 18, 2013, the hospital filed its notice of appeal from the default judgment of November 5, 2013. In an order of December 31, 2013, the court denied the hospital's motion to set aside and explained the damages award:

> 4. The testimony revealed that at the time of the occurrence giving rise to this lawsuit Ella Thurmon was a healthy, active wife, mother, and grandmother. She worked with her husband in his logging business as a bookkeeper and errand runner. She maintained the house, cooked, did yard work, and helped with the hay harvest. She walked, traveled, was frequently involved in family gatherings, and played with grandchildren on their level. She had been a loving wife and companion to her husband for 40 years.

3

SLIP OPINION

5. After her injury on MCSA property, Ella Thurmon experienced a dramatic change in condition. She suffered from constant pain for which she took prescription medication with little relief. Having birthed four children, Ella Thurmon described the pain as worse than childbirth because it did not go away and rated it as a 10 on a scale of 1 to 10. She cannot walk, sit, stand, or lie down for any length of time. Consequently, the activities described above have been eliminated or severely curtailed. Also, she cannot sleep well and her personality has changed for the worse, generating emotional consequences. Her medical treatment has been reasonable and necessary for her condition and will continue in the future where her life expectancy is 22 years. The prognosis is that her condition is permanent.

6. Observing the Thurmons in the courtroom, the Court found their testimony to be credible and compelling. The sums awarded for the elements of damage are supported by the evidence and are therefore reasonable and appropriate for the injuries sustained.

7. The Court is aware that the ratio of the judgment to the past medical expenses is a high ratio. However, the assessment of damages cannot always be so mechanical. The injuries sustained by the Thurmons are life-altering injuries. The nature of such injuries is unaffected by what a third party may charge to diagnose, treat, or temporarily alleviate the resulting condition. Likewise, the condition will continue unabated if the injured party chooses not to seek treatment. Medical expenses cannot always be the sole determinative factor in the assessment of damages. The purpose of damages is to compensate for the condition, not the monetary cost of the condition.

8. As of December 4, 2013, the condition of Ella Thurmon is permanent. The negligence of MCSA has sentenced her to a life of constant pain and discomfort, significantly reduced the quality of her life, and left her with no hope for improvement. Under the facts of this case, the damages awarded to the Thurmons will remain as originally determined.

On January 30, 2013, the hospital filed an amended notice of appeal from the default judgment and the denial of the motion to set aside the judgment.

In Arkansas, a default judgment establishes liability but not the extent of damages. *Volunteer Transp., Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004). Evidence of future pain and suffering and permanent disability must be established with reasonable certainty and must not be left up to speculation or conjecture. *Id.* A hearing is required to establish damages,

and the plaintiff must introduce evidence to support damages. *Entertainer, Inc. v. Duffy*, 2012 Ark. 202, 407 S.W.3d 514. This is so even in the absence of the defaulting party. *Id*. (citing *McGraw v. Jones*, 367 Ark. 138, 238 S.W.3d 15 (2006)). Thus, a party's failure to appear at the damages hearing does not procedurally bar it from challenging the award of damages against it. *Entertainer, Inc.*, *supra*.

In civil cases where the trial court, rather than a jury, sits as the trier of fact, the standard of review on appeal is whether the court's findings are clearly erroneous or clearly against the preponderance of the evidence. *McGraw*, *supra*. Here, the evidence at the damages hearing consisted of the Thurmons' testimony and their exhibit of medical records with bills and related travel expenses totaling $30,809.98. The Thurmons collectively testified that Ella, as a result of her injury, could no longer do activities she had formerly done: mow, weed-eat, rake hay, and fix fences; help Mickey in his logging business by keeping the books, being with him at work, and getting parts for him; drive or ride without problems; take regular trips to visit family in Louisiana; play outdoors with her grandchildren; and eat out or walk around Sam's or Bass Pro Shop while in Monroe or Shreveport. They testified about her medical treatment after the injury—including an MRI, steroid injections, and pain medication—and about her continued pain, difficulty in sleeping, and decrease in activities and enjoyment of life.

Mickey testified that Ella's inability to help him had been a strain on him, that he recently had open-heart surgery, that they did "not do much" anymore, and that he was "missing out" on companionship with his wife. Ella testified that her pain was "a 10," worse

5

than childbirth, and had affected her emotionally. She also stated:

> I stay at home. Riding and walking hurt. . . . My husband had a heart attack this year. I think my injury might have affected his heart. I want my husband to be compensated for his loss of consortium.

She answered affirmatively when her counsel suggested amounts of judgment that would be

fair and reasonable:

COUNSEL: Okay. Do you believe that $250,000 for your bodily injury pain and suffering is a fair amount? . . . [D]o you want a judgment for your personal injury part of your pain and suffering for $250,000?

ELLA: Yes, sir.

. . . .

COUNSEL: All right. Do you want also to be compensated for your mental anguish?

ELLA: Yes, sir.

COUNSEL: And do you want a judgment against the hospital for $250,000 for your mental anguish?

ELLA: Yes, sir.

COUNSEL: All right. Do you want Mickey to be compensated for his loss of companionship and consortium?

ELLA: Yes, sir.

COUNSEL: Do you believe that $100,000 is fair?

ELLA: Yes, sir.

COUNSEL: So you will be sixty-four in January. . . right?

ELLA: Yes, sir.

COUNSEL: Okay. Looking at the actuary tables, you've got at least another

twenty-two years.    Do you want the court to award a reasonable amount that the court determines is reasonable for future medicals?

ELLA:          Yes, sir.

                              . . . .

COUNSEL:       And so far, we've got $30,909.98, so you believe that for future medicals reduced down to cash value today, do you believe that $150,000 for future medical bills is fair?

ELLA:          Yes, sir.

Ella also agreed with her attorney's assertion that she was seeking judgment of $600,000, plus $30,809.98 for past medicals and $15,000 for future medicals.   The court orally assessed damages against MCSA of $645,809.98, stating that its decision was based on the exhibits and testimony and the court's agreement with counsel's figures.[2]

The hospital argues that the awarded amounts—$250,000 for pain and suffering, $250,000 for mental anguish, $100,000 for loss of consortium, and $15,000 for future medicals—are simply numbers imagined by the Thurmons' counsel and have no foundation in the evidence at the default hearing.  It also argues that the medical proof does not support opening statements by the Thurmons' counsel at the damages hearing regarding a diagnosis of spinal injuries resulting from Ella's fall.  Because we reverse on the first argument, we need not address the second.

Evidence of future pain and suffering and permanent disability must be established with reasonable certainty and must not be left up to speculation or conjecture on the part of the

---

[2]The resulting written judgment of November 5, 2013, appears to contain a scrivener's error substituting the amount $645,890.98.  The December 31, 2013 order denying the motion to set aside correctly recites the amount $645,809.98.

SLIP OPINION

fact-finder. *E.g., Volunteer, supra.* The $4,835,000 default-damages award in *Volunteer* included $500,000 for the nature, extent, and permanency of appellee's alleged back injury; $135,000 for past and future medical expenses; $2,000,000 for past and future pain, suffering, and mental anguish; and $2,200,000 for past and future lost earnings. Our supreme court reversed and remanded for a damages hearing because no expert medical testimony was presented, appellee was the sole witness regarding damages, there was no specific testimony regarding medical bills or their summary, there was no proof that each expense was necessary or related to the motor-vehicle accident at issue, and the record was silent as to how the trial court arrived at the damages amounts.

In *McGraw, supra*, the medical-malpractice $500,000 default-damages award was over ten times the amount of appellees' actual out-of-pocket medical bills and lost wages, but appellees' attorney characterized past pain and suffering and past and continued mental anguish as being the "more significant" damages. Our supreme court reversed and remanded for a damages hearing, noting that appellees' own self-serving testimony was the only proof of the nature, extent, and permanency of injury and that the circuit court apparently had arrived at the $500,000 figure merely at the suggestion of counsel for appellees after a discussion off-record.

Here, the default-damages award of $645,809.98 was over twenty times the only exhibit offered, which was proof of medical bills and related travel expenses. We recognize that the circuit court found the Thurmons' testimony to be credible and compelling, and we acknowledge the court's reasoning that the assessment of damages cannot always be

mechanical. However, we note that theirs was the only testimony, and that, similarly to *Volunteer* and *McGraw*, it lacked any supporting computation, analysis, objective proof, or expert opinion. Although counsel suggested separate figures for pain and suffering, mental anguish, loss of consortium, and future medicals, there was no foundation for these figures and no proof other than the Thurmons' simply agreeing to the amounts. On this record, we hold that these figures were based on speculation and conjecture. The circuit court clearly erred in awarding damages in the amount of $645,809.98. We reverse and remand for a hearing on damages.

Reversed and remanded.

WHITEAKER and VAUGHT, JJ., agree.

*Friday, Eldredge & Clark*, by: *Jason B. Hendren*, and *Travis J. Fowler*, for appellant.

*Law Office of David P. Price, P.A.*, by: *David P. Price*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellees.